# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| SERGIO GROBLER, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INOTIV, INC., ROBERT W. LEASURE, and BETH A. TAYLOR, <br><br> Defendants. | Case No. 4:22-cv-00045-PPS-JEM |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FRED WAELTER AND CHRIS M. CAVENS FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND <u>APPROVAL OF LEAD COUNSEL</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

ARGUMENT ................................................................................................................................ 6

    I.    WAELTER AND CAVENS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ..................................................................................................... 6

        A.    Waelter and Cavens Are Willing to Serve as Co-Lead Plaintiffs ............... 7

        B.    Waelter and Cavens Have the "Largest Financial Interest" in the Action .. 7

        C.    Waelter and Cavens Otherwise Satisfy the Requirements of Rule 23 ........ 8

        D.    Waelter and Cavens Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses .................................. 12

    II.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................... 13

CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) ................................................................................................9

*Barnet v. Elan Corp., PLC.*,
  236 F.R.D. 158 (S.D.N.Y. 2005) .........................................................................................11

*Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
  No. 12 C 3297, 2012 U.S. Dist. LEXIS 161441 (N.D. Ill. Nov. 9, 2012) ..........................9, 12

*Chandler v. Ulta Beauty, Inc.*,
  No. 18-cv-1577, 2018 U.S. Dist. LEXIS 107340 (N.D. Ill. June 26, 2018) ........................9, 10

*Gumm v. Molinaroli*,
  No. 16-CV-1093-PP, 2016 U.S. Dist. LEXIS 157155
  (E.D. Wis. Nov. 14, 2016) .....................................................................................................9

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531
  (E.D.N.Y. Dec. 15, 2017) ................................................................................................11, 12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d. Cir. 2001) .............................................................................................11, 13

*In re Comverse Technology, Inc. Securities Litigation*,
  No. 1:06-cv-01825 (E.D.N.Y.) .............................................................................................14

*In re Groupon Sec. Litig.*,
  No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012) .........................7, 10

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) .............................................................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................9

*In re Petrobras Securities Litigation*,
  No. 14-cv-09662 (S.D.N.Y.) ...........................................................................................13, 14

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ...............................................................................................13

*Kuebler v. Vectren Corp.*,
    No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 153360
    (S.D. Ind. Aug. 10, 2018)..........................................................................................................11

*Lax v. First Merchants Acceptance Corp.*,
    Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ....................7, 9

*Maiden v. Merge Techs., Inc.*,
    Nos. 06-C-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006) ............................13

*Panasuk v. Steel Dynamics, Inc.*,
    No. 1:09-CV-66, 2009 U.S. Dist. LEXIS 44519 (N.D. Ind. May 27, 2009) ...........................11

*Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) .................................12

*Shah v. Zimer Biomet Holdings, Inc.*,
    No. 3:16-CV-00815-TLS-MGG, 2017 U.S. Dist. LEXIS 50236
    (N.D. Ind. Apr. 3, 2017)...............................................................................................8, 9, 10, 13

*Takara Trust v. Molex Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005).................................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................................13

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................................11

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
    No. 13-6731, 2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) .....................................12

*Winn v. Symons Int'l Grp.*,
    IP 00-0310-C-B/S, 2001 U.S. Dist. LEXIS 3437 (S.D. Ind. Mar. 21, 2001) ..........................11

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................6, 7, 8, 10, 12, 13

Private Securities Litigation Reform Act of 1995 ....................................................1, 6, 7, 8, 11, 13

Securities Exchange Act of 1934.............................................................................................1, 10

**Rules**

Federal Rule of Civil Procedure 23 .......................................................................1, 2, 6, 8, 9, 10

Movants Fred Waelter and Chris M. Cavens (collectively, "Waelter and Cavens") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Waelter and Cavens as Co-Lead Plaintiffs on behalf of persons or entities who purchased or otherwise acquired publicly traded Inotiv, Inc. ("Inotiv" or the "Company") securities between September 21, 2021 and June 13, 2022, both dates inclusive (the "Class Period") (the "Class"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint in the above-captioned action (the "Action") (Dkt. No. 1 ("Complaint")) alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Inotiv investors, including Waelter and Cavens, incurred significant losses following the disclosure (or materialization of the risk) of the alleged fraud, which caused Inotiv's share price to fall sharply, damaging Waelter and Cavens and other Inotiv investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Waelter and Cavens collectively purchased 29,500 shares of publicly traded Inotiv securities, expended $791,642 on their purchases, retained 1,475 of their Inotiv shares, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $126,736 in connection with their transactions in publicly traded Inotiv securities. *See* Declaration of Patrick V. Dahlstrom in

Support of Motion ("Dahlstrom Decl."), Exhibit ("Ex.") 1. Accordingly, Waelter and Cavens believe that they have the largest financial interest in the relief sought in the Action.

Beyond their considerable financial interest, Waelter and Cavens also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Action on behalf of the Class, Waelter and Cavens have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in this Action.

Accordingly, Waelter and Cavens respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

Inotiv purports to be a contract research organization which provides nonclinical and analytical drug discovery and development services and research models and related products and services. Complaint ¶ 7. On September 21, 2021, Inotiv announced the acquisition of Envigo RMS, LLC ("Envigo"). *Id.* On November 5, 2021, Inotiv completed the acquisition of Envigo which is now a direct, wholly owned subsidiary of Inotiv. *Id.*

Throughout the Class Period, Defendants materially misrepresented and failed to disclose adverse facts pertaining to the Company's business, operations, and prospects, which were known or recklessly disregarded by the Defendants. *Id.* ¶ 26. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Envigo and Inotiv's Cumberland, Virginia facility (the "Cumberland Facility") engaged in widespread and flagrant violations of the Animal

Welfare Act ("AWA"); (2) Envigo and Inotiv's Cumberland Facility continuously violated the AWA; (3) Envigo and Inotiv did not properly remedy issues with regards to animal welfare at the Cumberland Facility; (4) as a result, Inotiv was likely to face increased scrutiny and governmental action; (5) Inotiv would imminently shut down two facilities, including the Cumberland Facility; (6) Inotiv did not engage in proper due diligence; and (7) as a result, Defendants' statements about their business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id.*

On May 20, 2022, after market hours, Inotiv filed with the U.S. Securities and Exchange Commission a current report on Form 8-K which announced the search and seizure at the Cumberland Facility and a subsequent U.S. Department of Justice complaint alleging violations of the AWA:

> ***On May 18, 2022, the U.S. Department of Justice ("DOJ"), together with federal and state law enforcement agents, executed a search and seizure warrant on the Cumberland, Virginia facility.*** The warrant was issued by the U.S. District Court for the Western District of Virginia on May 13, 2022. ***Consistent with Company policy, the Company is cooperating with DOJ and other involved authorities.***
>
> ***On May 19, 2022, a complaint was filed against Envigo in the U.S. District Court for the Western District of Virginia. The complaint is a civil action by DOJ alleging violations of the Animal Welfare Act at the Cumberland, Virginia facility.*** The complaint seeks declaratory and injunctive relief and costs. The Company is in the process of reviewing the matters set forth in the complaint and at this time cannot reasonably estimate the associated costs.

(Emphases added.) *Id.* ¶ 27.

On May 21, 2022, Judge Norman K. Moon of the U.S. District Court for the Western District of Virginia issued an amended temporary restraining order (issued *ex parte*) which stated, *inter alia*, that "[t]his Court now concludes that the Government has provided sufficient evidence that Envigo is engaged in serious and ongoing violations of the [AWA], and that an immediate temporary restraining order must issue to put a halt to such violations pending further

3

proceedings"; that "[o]ver 300 beagle puppies have died onsite due to 'unknown causes' over seven months"; that "[m]any were not given anesthesia before they were euthanized by intracardiac injection"; that "[n]ursing female beagles were denied food, and so they (and their litters) were unable to get adequate nutrition"; that "[o]ver an eight-week period, 25 beagle puppies died from cold exposure"; that "[t]he Government contends that Envigo has consistently failed, despite repeated warnings and opportunities for correction, to meet its obligations under AWA's implementing regulations to provide adequate veterinary care"; that "[b]ased on the overwhelming evidence produced by the Government, the Court agrees"; that "Envigo's level of veterinary care for its beagles has not improved since those earlier inspections"; that "[t]he Government maintains, and the Court agrees, that such a policy is inconsistent with Envigo's obligation to utilize methods appropriate to the prevention of disease and injury"; that "[p]erhaps the most heinous discovery of the November 2021 inspection was that Envigo had allowed staff to euthanize dogs without anesthesia, in violation of the facility's own program of care"; that "July 2021 inspectors discovered that nursing females were being denied food for 42-hour periods—apparently in an effort to reduce milk production"; that "[i]n lieu of the daily feeding required by § 3.9(a), food receptacles were placed in front of the mothers' enclosures, so that they could see and smell the food but not eat it"; and that "Envigo has been operating and continues to operate in a manner that flagrantly disregards numerous health protocols, placing the health of animals in serious danger and risk of death." *Id.* ¶ 28.

On this news, the Company's share price fell $5.19 per share, or 28%, to close at $13.14 per share on May 23, 2022, the next trading day, on unusually heavy trading volume, damaging investors. *Id.* ¶ 29.

4

On June 13, 2022, after trading hours, Inotiv issued a press release entitled "Inotiv, Inc. Announces Site Closures and Consolidation Plans" which stated the following regarding Inotiv closing two Envigo facilities mere months after the acquisition:

> Inotiv . . . a leading contract research organization specializing in nonclinical and analytical drug discovery and development services and research models and related products and services, *announces the closure of two Envigo RMS ("Envigo") facilities in Virginia: a purpose-bred canine facility in Cumberland and a rodent breeding facility in Dublin as part of restructuring activities following its acquisition of Envigo RMS LLC in November 2021*.
>
> Robert Leasure, Jr., Inotiv's President and Chief Executive Officer commented, *"Since the Envigo acquisition in November 2021, the Cumberland, Virginia, facility was recognized as needing improvements and investments. Inotiv has been pleased with the continued and significant progress in improvements at the Cumberland facility since the acquisition, as evidenced by recent inspections by the USDA and other auditing organizations.* We sincerely appreciate our customers', employees', and third-party input to date in support of this facility. *The required investments to improve the facility and the lead time to achieve these improvements have recently increased. As a result, we have decided we will not be investing further in this facility, and it will be closed. We will implement an orderly closure plan.* Cumberland comprises less than 1% of our total Inotiv revenue and has not contributed to profits in our Research Models and Services segment since the acquisition."
>
> Leasure continued, "The announced closure of the Dublin, Virginia, facility is part of Inotiv's ongoing restructuring and site optimization plan which includes the previously announced closure of facilities in Haslett, Michigan, and Boyertown, Pennsylvania. Closing the Dublin facility will also reduce anticipated capital expenditure needs at this site. *The current production in Dublin will be relocated to other facilities which have recently been expanded or refurbished.* We believe our site restructuring and optimization plan will provide the Company with additional operational efficiencies and will allow customers to be better served from existing, refurbished locations. We expect these three facilities' transitions to be complete by December 2022."

(Emphases added.) *Id.* ¶ 30.

On this news, the Company's share price fell $0.25 per share, or 2%, to close at $12.78 per share on June 14, 2022, further damaging investors. *Id.* ¶ 31.

5

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiff in the Action and other Class members have suffered significant losses and damages. *Id.* ¶ 32.

## ARGUMENT

### I. WAELTER AND CAVENS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Waelter and Cavens should be appointed Co-Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the Action and otherwise strongly satisfy the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Waelter and Cavens satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### A.     Waelter and Cavens Are Willing to Serve as Co-Lead Plaintiffs

On June 23, 2022, counsel for the plaintiff in the Action caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Defendants, and which advised investors in Inotiv securities that they had until August 22, 2022—*i.e.*, 60 days from the date of the PSLRA Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Dahlstrom Decl., Ex. 2.

Waelter and Cavens have filed the instant motion pursuant to the PSLRA Notice and have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. 3.  Accordingly, Waelter and Cavens satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### B.     Waelter and Cavens Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, Waelter and Cavens have the largest financial interest of any Inotiv investor or investor group seeking to serve as Lead Plaintiff.  For the purposes of lead plaintiff appointment pursuant to the PSLRA, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered (collectively, the "*Lax* factors").  Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997); *see In re Groupon Sec. Litig.*, No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899, at *7-*8 (N.D. Ill. Aug. 28, 2012)

7

(collecting cases and finding "many courts in this District and others look to the . . . four [*Lax*] factors").

During the Class Period, Waelter and Cavens collectively: (1) purchased 29,500 shares of publicly traded Inotiv securities; (2) expended $791,642 on their purchases; (3) retained 1,475 of their Inotiv shares; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $126,736 in connection with their Class Period transactions in publicly traded Inotiv securities. *See* Dahlstrom Decl., Ex. 1. To the extent that Waelter and Cavens possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.  Waelter and Cavens Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

In making its determination that lead plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Shah v. Zimer Biomet Holdings, Inc.*, No. 3:16-CV-00815-TLS-MGG, 2017 U.S. Dist. LEXIS 50236, at *4 (N.D. Ind. Apr. 3, 2017) ("To be appointed Lead Plaintiffs at this early stage of litigation, the Movants need only make a preliminary showing that they have satisfied the

8

Rule 23(a) requirements of typicality and adequacy."); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (same); *see also, e.g.*, *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 U.S. Dist. LEXIS 107340, at *13 (N.D. Ill. June 26, 2018) (finding movant "has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23"). Moreover, "in the context of motions for lead plaintiff inquiries, courts . . . do not engage in a 'wide-ranging analysis under Rule 23,' and generally focus on only typicality and adequacy." *Gumm v. Molinaroli*, No. 16-CV-1093-PP, 2016 U.S. Dist. LEXIS 157155, at *14 (E.D. Wis. Nov. 14, 2016) (quoting *Lax*, U.S. Dist. LEXIS 11866, at *6); *see also Shah*, 2017 U.S. Dist. LEXIS 50236, at *4; *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The typicality requirement of Rule 23(a)(3) requires that "'[a] claim . . . arises from the same event or practice or course of conduct that gives rise to the claims of other class members' and is 'based on the same legal theory.'" *Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 12 C 3297, 2012 U.S. Dist. LEXIS 161441, at *15-*16 (N.D. Ill. Nov. 9, 2012) (quoting *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)); *see also Shah*, 2017 U.S. Dist. LEXIS 50236, at *4. "A lead plaintiff meets the typicality requirements if its claims or defenses are typical of the claims or defenses of the class." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 23(a)(3)); *see also, e.g., Shah*, 2017 U.S. Dist. LEXIS 50236, at *4-*5 ("[T]he Movants claims are typical of the putative class because they purchased a security interest in [the company] at the artificially inflated price during the class period just like all the other putative class members.").

9

The claims of Waelter and Cavens are typical of those of the Class. Waelter and Cavens allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Inotiv. Waelter and Cavens, as did all Class members, purchased publicly traded Inotiv securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Inotiv's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"A lead plaintiff satisfies the Rule 23(a)(4) adequacy requirement 'if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously.'" *Shah*, 2017 U.S. Dist. LEXIS 50236, at *5 (quoting *In re Groupon Sec. Litig.*, No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899, at *11 (N.D. Ill. Aug. 28, 2012)); *Chandler*, 2018 U.S. Dist. LEXIS 107340, at *14 (same).

As set forth in greater detail below, in Pomerantz, Waelter and Cavens have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action and submit their choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Waelter and Cavens are also represented by the Portnoy Law Firm in this litigation. There is no evidence of antagonism or conflict between the interests of Waelter and Cavens and the interests of the Class. Waelter and Cavens have submitted signed Certifications declaring their commitment to protecting the interests of the Class (*see*

10

Dahlstrom Decl., Ex. 3), and the significant losses incurred by Waelter and Cavens demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Moreover, Waelter and Cavens constitute an appropriate group of the type routinely appointed to serve as Co-Lead Plaintiffs. *See Panasuk v. Steel Dynamics, Inc.*, No. 1:09-CV-66, 2009 U.S. Dist. LEXIS 44519, at *5, *8 (N.D. Ind. May 27, 2009) (appointing two investors as lead plaintiffs and finding that "a group of just two lead plaintiffs 'clearly limits the inefficiencies that arise with a large, unwieldy leadership group'" (quoting *Winn v. Symons Int'l Grp.*, IP 00-0310-C-B/S, 2001 U.S. Dist. LEXIS 3437, at *12 (S.D. Ind. Mar. 21, 2001))); *Kuebler v. Vectren Corp.*, No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 153360, at *12 (S.D. Ind. Aug. 10, 2018) (finding a group "comprised of three individuals . . . is a small enough group to adequately control the litigation" and that "the modern trend has been to allow small groups to act as lead plaintiff"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531, at *12 (E.D.N.Y. Dec. 15, 2017); *Barnet v. Elan Corp., PLC.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Further demonstrating their adequacy, Waelter and Cavens have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to

11

seek appointment jointly as co-lead plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Dahlstrom Decl., Ex. 4. Courts routinely appoint more than one investor as Co-Lead Plaintiffs under such circumstances. *See, e.g.*, *Bristol*, 2012 U.S. Dist. LEXIS 161441, at *20-*21 (appointing group of two unrelated investors that submitted a joint declaration stating they "conferred with one another . . . [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation"); *Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at *12 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

      **D.**    **Waelter and Cavens Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses**

The presumption in favor of appointing Waelter and Cavens as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

    (aa)    will not fairly and adequately protect the interests of the class; or

    (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Waelter and Cavens to fairly and adequately represent the Class has been discussed above. Waelter and Cavens are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, Waelter and Cavens should be appointed Co-Lead Plaintiffs for the Class.

## II.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiffs' choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Shah*, 2017 U.S. Dist. LEXIS 50236, at *5-*6 (finding "[i]n approving the lead plaintiff's selection of counsel" courts "review the selection deferentially and only intervene if it is 'necessary to protect the interests of the plaintiff class'" (quoting *Cendant*, 264 F.3d at 274)); *see also Maiden v. Merge Techs., Inc.*, Nos. 06-C-349, 2006 U.S. Dist. LEXIS 85635, at *14 (E.D. Wis. Nov. 21, 2006); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Waelter and Cavens have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Dahlstrom Decl., Ex. 5. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras*

13

*Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues like those raised in the instant Action, Waelter and Cavens's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Waelter and Cavens's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Waelter and Cavens respectfully request that the Court issue an Order: (1) appointing Waelter and Cavens as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated: August 22, 2022                     Respectfully submitted,

POMERANTZ LLP

*/s/ Patrick V. Dahlstrom*
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

14

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice application forthcoming*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movants Fred Waelter and Chris M. Cavens and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(*pro hac vice application forthcoming*)
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Movants Fred Waelter and Chris M. Cavens*

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Patrick V. Dahlstrom*
Patrick V. Dahlstrom