## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| In re INOTIV, INC. SECURITIES LITIGATION | Case No. 4:22-cv-00045-PPS-JEM |
| | Judge Philip P. Simon |
| | Magistrate Judge John E. Martin |

### DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS LEAD PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Michael J. Diver (*pro hac vice*)
Michael J. Lohnes (*pro hac vice*)
Carrie M. Stickel (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
michael.diver@katten.com
michael.lohnes@katten.com
carrie.stickel@katten.com
*Lead Counsel for Defendants*

Darren A. Craig, Atty. No. 25534-49
FROST BROWN TODD LLC
201 North Illinois Street
Suite 1900
Indianapolis, Indiana 46204
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
dcraig@fbtlaw.com
*Local Counsel for Defendants*

## INTRODUCTION

Like the FAC,[1] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition") rests entirely on hindsight, speculation, unsupported conclusions, and mischaracterizations of the securities laws. Plaintiff's claims hinge entirely on a non-existent duty to disclose unofficial USDA findings relating to a single, unprofitable facility and receipt of industry-wide document subpoenas. Further, the FAC lacks a single contemporaneous allegation of falsity. In particular, Plaintiff's claim based on Defendants' alleged failure to disclose the subpoenas is nothing but speculation and hindsight, relying exclusively on the fact that employees of a *third-party overseas* supplier were ultimately indicted. Defendants could not have possibly predicted that an indictment was coming. To make matters worse, many of the statements and alleged omissions at issue are non-actionable puffery or opinions, otherwise immaterial, or are protected by the safe harbor. Plaintiff's Opposition fails to meaningfully address these and other dispositive arguments set forth in Defendants' Memorandum.

Further, the FAC fails to allege even a slight, let alone a cogent and compelling, inference of scienter. Not only are there no damning internal reports, stock sales, first-hand accounts of fraudulent intent, or other typical indicia of scienter, but Defendants made timely disclosures, **purchased** stock, and had no motivation to conceal the allegedly omitted information. That lack of motivation is buttressed by the market's neutral or positive reaction to various disclosures. For example, Inotiv's stock price quickly rebounded following many of the temporary price drops and actually increased when one of the subpoenas at issue was disclosed. For these and other reasons, Plaintiff has also failed to allege loss causation. Finally, Plaintiff's overlapping § 14(a) and 20(a) claims must be dismissed for similar reasons.

---

[1] Capitalized terms not defined herein have the same meanings set forth in Defendants' Memorandum in Support of Motion to Dismiss Lead Plaintiff's FAC ("Memorandum").

## ARGUMENT

The FAC fails to satisfy Rule 9(b), let alone the heightened-pleading requirements of the PSLRA. Specifically, Plaintiff has utterly failed to plead an actionable false or misleading statement, materiality, scienter, or loss causation. Plaintiff also fails to allege a materially false or misleading proxy statement or loss causation in support of its § 14(a) claim. As a result, Plaintiff's § 20(a) claims fail as well. Defendants' motion to dismiss should be granted with prejudice.

## I. PLAINTIFF CANNOT ESTABLISH A DUTY TO DISCLOSE ANY ALLEGEDLY OMITTED INFORMATION. MOREOVER, SUCH INFORMATION WAS, IN FACT, DISCLOSED.

Plaintiff fails to identify an applicable duty to disclose the USDA inspections or the receipt of subpoenas relating to an investigation into a third party (both of which were actually disclosed). Mem. at 11-12. Plaintiff does not seriously contest, and therefore concedes, that the federal securities laws do not obligate an issuer to disclose government investigations or contested, uncharged, or unadjudicated claims of wrongdoing, let alone the mere receipt of a subpoena. Mem. at 12.[2] Rather, Plaintiff argues that Defendants were required to disclose the alleged omissions because they rendered affirmative statements false or misleading and because such disclosure was required under Regulation S-K. Opp. at 15-17. Plaintiff fails on both fronts, as discussed below. *See infra* Sections I.A, II.A. Moreover, Inotiv timely disclosed the USDA investigation, grand jury subpoenas, and the indictment in the USAO-SDF investigation. Mem. at 12-14.

---

[2] Plaintiff's attempt to distinguish this relevant authority is unsuccessful. Opp. at 16 n.18 (citing *Heavy & Gen. Laborers' Loc. 472 & 172 Pension and Annuity Funds v. Fifth Third Bancorp*, 2022 WL 1642221 (N.D. Ill. May 24, 2022) (Plaintiff fails to explain why receipt of subpoenas "several months earlier" sets this case apart); *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1 (S.D.N.Y. 2016) (no duty to disclose where defendants were not subject to a pre-existing duty of disclosure, did not make express disclosures related to the investigation that were rendered materially misleading by omitting information about the investigation, and the investigation itself was not material)); *see also Lewis v. YRC Worldwide Inc*, 2020 WL 1493915 at *10 (N.D.N.Y. Mar. 27, 2020) (participation in nine-year DOJ investigation, including providing "hundreds of thousands of pages of documents" and engaging in settlement discussions, did not create a general disclosure duty).

## A.    Regulation S-K Does Not Support Plaintiff's Claims.

Plaintiff incorrectly asserts that Regulation S-K imposed a separate duty to disclose. Opp. at 16-17. However, Plaintiff wholly fails to explain how the allegedly undisclosed information, which was actually disclosed, falls within Regulation S-K (it does not). *See* Opp. at 17. A violation of Item 303 requires proof of "*actual knowledge*" and issuers are only required to disclose *known and material* proceedings and risks under Items 103 and 105. Mem. at 11 n.7. None of the information at issue satisfies these standards.[3] *Id.* Plaintiff fails to address, let alone rebut, these dispositive points. *See, e.g.*, *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failing to address an argument that is not frivolous "operates as a waiver"); *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 592 (N.D. Ind. 2012). Finally, the Seventh Circuit has never held that Regulation S-K imposes a duty to disclose that can give rise to fraud under the Exchange Act. Other Circuits have rightly rejected such an argument. Mem. at 11 n.7. Accordingly, Regulation S-K does not save Plaintiff's claims from dismissal.

## B.    Inotiv Timely Disclosed All Relevant Risks and Alleged Omissions.

Prior to and throughout the class period, Inotiv's robust risk disclosures cautioned investors about various risks associated with potential (1) non-compliance with governmental regulations and (2) disruption in the supply of NHPs. Mem. at 12-13. Plaintiff quibbles with these disclosures, contending that they did not include "specific risks" associated with the (1) USDA inspections and (2) subpoenas and USAO-SDF investigation. Opp. at 18. Both arguments fail. Inotiv did disclose the exact risks of non-compliance, including potential harm to its "reputation and operating results" and that the USDA could "impose fines, suspend and/or revoke animal research licenses or confiscate research animals." Mem. at 8, 13; Ex. L at 2; *see also* Opp. at 18 n.22 (acknowledging

---

[3] Indeed, the USDA investigation and DOJ proceeding were closed with no fines or penalties. Mem. at 7.

disclosure of USDA investigation).[4] Further, Plaintiff admits that violations at the Cumberland Facility were publicized and had "entered the market" by November 15, 2021, a *year* before the end of the class period. Opp. at 18 n.22; Mem. at 13.[5] It is axiomatic that "[t]he securities laws do not require firms to 'disclose' information that is already in the public domain." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007).

Inotiv also disclosed risks associated with the limited supply of NHPs, which are the exact risks Plaintiff alleges materialized as a result of the USAO-SDF investigation. Mem. at 12-13, 28; Opp. at 14 (referring to NHP supply as a risk). For example, as Plaintiff points out, Leasure stated on November 16, 2021, that "access to research models . . . is becoming more and more of a problem." Opp. at 14; *see also* ¶ 232. The USAO-SDF investigation was also a matter of public record as early as June 22, 2021, *prior to the class period*. ¶¶ 113-14; Mem. at 13. Moreover, the FAC does not allege a single contemporaneous fact indicating that Defendants had any reason to know that the investigation was focused on its supplier prior to the unsealing of the indictment,[6] which Inotiv then promptly disclosed. Mem. at 14. In conclusion, Plaintiff fails to identify an applicable duty to disclose the allegedly omitted information. Even if such a duty existed, the

---

[4] Plaintiff's authority is readily distinguishable. Opp. at 18 n.22 (citing *In re BHP Billiton Ltd. Securities Litig.*, 276 F. Supp. 3d 65, 83 (S.D.N.Y. 2017) (general disclosures did not alert investors to specific, known risks); *Menaldi v. Och-Ziff Capital Mgt. Group LLC*, 164 F. Supp. 3d 568, 584 (S.D.N.Y. 2016) (disclosures misled investors into believing company was not facing a government investigation)).

[5] Purported conditions at the Cumberland Facility were also the subject of activist scrutiny and public reporting as early as July 2019. Mem. at 18 n.8. While Plaintiff claims that Inotiv issued a statement on November 16, 2021 "effectively denying the USDA's findings" (Opp. at 18 n.22), the FAC alleges that this statement directly acknowledged the USDA's findings. Mem. at 20; ¶ 197 (stating that Envigo was "continuing to take the necessary corrective actions for all issues outlined in the reports"). Further, "effectively denying" the USDA's *publicly available* findings would have been impossible and nonsensical.

[6] The fact that the indictment was sealed demonstrates that the charges were confidential and further undermines any argument that Inotiv did or should have known what was going to happen.

relevant information was disclosed. As such, the alleged omissions cannot support a claim for securities fraud.

## II. THE FAC FAILS TO ALLEGE FACTS DEMONSTRATING THAT ANY STATEMENTS OMITTED MATERIAL INFORMATION OR WERE MATERIALLY FALSE OR MISLEADING.

As an initial matter, contrary to Plaintiff's unfounded assertion (Opp. at 7, 13-14, 19 n.23), Defendants expressly challenged each of the potential misrepresentations and omissions in the FAC, including statements in the Cumberland and Primate Fact Sheets.[7] Mem. at 12-13 (no duty to disclose any alleged omissions), 26-27 (any omitted information about Cumberland Facility was financially immaterial), 22 (Primate Fact Sheets not rendered false by alleged omissions), 24-25, 24 n. 25 (quality-related statements constitute puffery). Plaintiff's assertion that Defendants' entire Motion must be denied so long as Plaintiff has alleged a single actionable statement somewhere in the 135-page FAC is similarly unfounded. Opp. at 7, 14.[8] As Plaintiff's own case law demonstrates, courts routinely dismiss certain statements and theories of fraud, while finding that others can withstand a motion to dismiss.[9]

---

[7] The FAC fails to allege with particularly which statements, if any, Plaintiff contends were facially false or misleading. Mem. at 22. Plaintiff's Opposition fails to provide any clarity—indiscriminately referring to false or misleading statements "and/or" omissions throughout. *See* Opp. at 6-22. Not only does this fail to comply with the applicable pleading standard, but Plaintiff also fails to rebut, and therefore concedes, Defendants' argument that none of the three potential misrepresentations were false or misleading when made. Mem. § IV. Accordingly, only alleged omissions remain at issue.

[8] In *Pierrelouis v. Gogo*, which Plaintiff relies on, the court questioned whether it could dismiss certain statements if others were sufficiently pled, but determined that the answer made "no difference" because all of the statements were actionable. No. 18 C 4473, 2021 WL 1608342, at *10–11 (N.D. Ill. Apr. 26, 2021). *BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015), which *Pierrelouis* relies on, was not a securities fraud case and the defendant's motion only moved on *parts* of a single claim. *Id.* at 325.

[9] *See Plumbers and Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F. Supp. 2d 858, 873-77, 887 (N.D. Ill. 2011) (dismissing certain statements while finding that others were sufficient to withstand a motion to dismiss); *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 983-85 (8th Cir. 2012) (same); *City of Sterling Heights Gen. Employees' Ret. System v. Hospira, Inc.*, 11 C 8332, 2013 WL 566805, at *17-25 (N.D. Ill. Feb. 13, 2013) (same). To the extent the Court finds that any theory of liability is adequately pled, which Defendants strongly dispute, but dismisses others, the class period should be modified to match any remaining statements and corrective disclosures at issue.

### A.    The Alleged Omissions Did Not Render Any Statements False or Misleading.

Despite its length, the FAC fails to identify a single actionable misstatement or omission. Plaintiff asserts that the misrepresentations and omissions at issue fall into two categories: (1) "ongoing AWA violations at the Cumberland Facility"; and (2) "the fact that the Company's principal supplier of NHPs was enmeshed in a Criminal Investigation implicating the NHP supply chain and that Envigo and OBRC had received grand jury subpoenas in that proceeding." Opp. at 6-7. Both categories fail to support a claim.

### i.    Defendants Did Not Omit Material Information About AWA Violations.

Rather than addressing Defendants' arguments or explaining how any of the challenged statements were false or misleading, whether by omission or on their face, Plaintiff's Opposition merely restates the same unfounded claims in the FAC. For example, Plaintiff fails to counter Defendants' argument that purportedly omitted information about the Cumberland Facility—a small, immaterial portion of the Company's business—did not render statements about Envigo, *as a whole*, false or misleading. Mem. at 16-17 (compiling cases).[10] Similarly, Plaintiff asserts that statements about the Cumberland Facility, remedial actions, and commitment to animal welfare failed to disclose the USDA's repeat findings, but does not deny that Inotiv never represented or implied that all issues identified by the USDA had been cured. Opp. at 10-12. Oppositely, Defendants acknowledged outstanding issues and, regardless, the AWA violations were publicly available on the USDA's website. Mem. at 20-21, 23-24; Opp. at 10. Accordingly, no reasonable investor would have believed the Company was downplaying or denying anything. *See Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 834 (N.D. Ill. 2000) ("A plaintiff cannot credibly claim to

---

[10] Plaintiff similarly challenges the representation that Envigo "supplies customers with genetically consistent research models time after time" (Opp. at 9 n.5), but fails to allege that customers received anything but genetically consistent research models. Mem. at 17 n.11.

be misled by a company's attempt to hide negative information when that same information is publicly available via alternate channels.").[11]

The statements in the Merger Agreement regarding compliance also fail. Plaintiff does not dispute that any immaterial violations were explicitly carved out of the relevant representation and that the Cumberland Facility was financially immaterial. Mem. at 18; *see* Opp. at 9 n.6.[12] Furthermore, with respect to the statement that "the results of Inotiv's due diligence review of Envigo" were taken into account, Plaintiff admits that the FAC does not allege that Inotiv disregarded or ignored any aspect of due diligence. Opp. at 10, n. 9. Accordingly, Plaintiff fails to allege that the challenged statements were false or misleading or rendered as such by purported omissions. *See In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 926 (S.D. Ind. 2008), *aff'd sub nom. Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009).

Further, like in the FAC, Plaintiff only points to later-issued USDA inspection reports, May 2022 actions by the DOJ, and a November 2022 indictment to impermissibly argue, in hindsight, that earlier challenged statements were false or misleading.[13] See, e.g., Opp. at 9 n.7, 10-12

---

[11] Plaintiff's assertion that Defendants had a general duty to disclose because a reasonable investor would have understood Defendants' representations to mean that the acquisitions "were reducing and not increasing risks" (Opp. at 16) wholly fails to satisfy the "[e]xacting pleading requirements" under *Tellabs* and is contradicted by the facts. Inotiv specifically cautioned investors prior to the acquisitions and throughout the class period that both Inotiv and Envigo faced potentially significant regulatory, supply, and acquisition risks. Mem. at 8-9, 12-13; *see also* Opp. at 14-15, 18. Plaintiff's assertion that Leasure represented that the Envigo acquisition eliminated risk (Opp. at 14 n.15) fails for the same reason. *See* Mem. at 12-13.

[12] Plaintiff's attempt to distinguish *Forman v. Meridian Bioscience, Inc.* falls flat (Opp. at 9 n.6), as the facts there are not identical. 367 F. Supp. 3d 674, 690 (S.D. Ohio 2019), *on reconsideration*, 387 F. Supp. 3d 791 (S.D. Ohio 2019) (company did not make, and thus was not liable for, representations made by opposing party in an arms-length business transaction before merger even though it attached a copy of the merger agreement to a Form 10-Q). Even if Defendants could be liable for statements they did not make under *Lorenzo* (*see* Opp. at 9 n.6), Plaintiff still fails to allege falsity, as discussed above.

[13] The CWs and the HSUS report further fail to allege contemporaneous evidence of falsity. Mem. at 14. The mere assertion that the source in the HSUS report worked at the Cumberland Facility during a broad time period fails to allege when the specific observations were purportedly made. Opp. at 8 n.4; Mem. at

(arguing that "USDA inspectors later found the same or substantially identical AWA violations").

Indeed, Plaintiff continues to ignore the discrepancy between the dates on which the USDA

inspections took place and the much later dates on which the findings were finalized and issued.

*Id.*; Mem. at 19-20, 14; Ex. Y at 5. This is impermissible fraud by hindsight. Mem. at 19-20, 14;

Ex. Y at 5.[14] *See Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010).

> ### ii. Defendants' Did Not Omit Material Information About the USAO-SDF Investigation or Subpoenas.

Moreover, Plaintiff fails to address or rebut Defendants' argument that statements about

the quality, supply, and availability of NHPs, which did not address or relate to the subpoenas or

USAO-SDF investigation, were not rendered false or misleading as a result of any alleged

omissions. Mem. at 22. Further, as discussed above, NHP supply constraints were disclosed and

well-documented throughout the class period, further condemning Plaintiff's claims.[15] *Supra*

Section I.B. Additionally, Plaintiff incorrectly claims that the representations in the Envigo Merger

Agreement regarding compliance were false and misleading because those representations omitted

---

15. Additionally, as with the CWs, Plaintiff wholly fails to allege anything about the employee referenced in the HSUS report, let alone describe the source with requisite detail. Mem. at 14.

[14] With regard to the November 2021 inspection report, Plaintiff impermissibly relies on new facts that are not in the FAC. Opp. at 11 n.10. In any event, the assertion that the USDA prepared an initial, longer report of the November 2021 inspection that was never issued only underscores Defendants' point that such reports are subject to change until issued. Similarly, although the first inspections occurred in July 2021 (Opp. at 9 n.7), the related reports were not issued until October 18, 2021. Mem. at 5. Plaintiff's authority is also inapposite. *See* Opp. at 9 n.7 (citing *Marwil v. Ent & Imler CPA Grp., PC*, 2004 WL 2750255, at *5 (S.D. Ind. Nov. 24, 2004) (allegations that defendant had access to relevant financial records when the alleged misrepresentations were made)); Opp. at 12, n.11 (citing *Pub. Pension Fund Grp.*, 679 F.3d at 984 (FDA issued final reports to defendant with findings of non-compliance that were contemporaneous with defendant's statements regarding compliance with FDA regulations)).

[15] Plaintiff acknowledges that the Company said there was a "limited international source of supply." Opp. at 13, 14 (explicitly noting supply risks). Moreover, Plaintiff's characterization of Leasure's May 13, 2022 statement as "assur[ing] investors that the purchase of OBRC had protected Inotiv from industry-wide NHP supply constraints" is baseless. Opp. at 15. Leasure stated that the OBRC acquisition "***provides an opportunity*** to further expand our services and address client needs ***at a time when the industry demand is outstripping supply***." ¶ 224. Finally, Plaintiff fails to explain how the receipt of two subpoenas render such statements false or misleading.

the subpoenas to Envigo and OBRC and the fact that the principal supplier was the focus of the USAO-SDF investigation. Opp. at 14. As an initial matter, the Merger Agreement predated Inotiv's acquisition of OBRC by four months and Plaintiff cannot explain why a subpoena to OBRC would ever be disclosed as part of a Merger Agreement with Envigo. Nonetheless, receipt of a subpoena does not render a statement regarding compliance with the law false or misleading. Mem. at 21-22; *Société Générale Sec. Services, GbmH v. Caterpiller, Inc.*, 2018 WL 4616356, at *6 (N.D. Ill. Sept. 26, 2018) ("If every investigation or executed search warrant was evidence of wrongdoing then what purpose do hearings and trials have?"). Finally, Plaintiff has not alleged *contemporaneous* facts suggesting that Defendants had knowledge of the scope or target of the USAO-SDF investigation. Mem. at 21-22. Plaintiff relies exclusively on the "***ultimate*** indictment." Opp. at 12 n. 12, 13. Plaintiff's claim fails for this additional reason.

### B.    The Challenged Statements and Omissions Are Immaterial.

In its Opposition, Plaintiff seeks to sidestep controlling and persuasive case law cited by Defendants establishing that the alleged misrepresentations and omissions fail for the additional reason that they are non-actionable puffery or opinions, otherwise immaterial as a matter of law, and/or protected by the PSLRA safe harbor.

### i.    The Qualitative Statements Are Nonactionable Puffery or Opinions.

As an initial matter and contrary to Plaintiff's warning to "proceed cautiously" (Opp. at 19), materiality can be determined as a matter of law on a motion to dismiss. *In re Midway Games, Inc. Securities Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004) ("court may properly address the issue [of materiality] on a motion to dismiss"). Tellingly, Plaintiff does not address a single one of the specific puffery statements set forth in Defendants' Memorandum. Mem. at 24 n.25, 25. Rather, Plaintiff generally argues, without explanation, that many of the challenged statements were material because they were made in the context of the Envigo acquisition. Opp. at 20.

However, the context of an acquisition does not alter the meaning of puffery.[16] Further, many of the puffery statements, including various statements regarding NHPs, were not made in the context of the Envigo acquisition. *See* Mem. at 24-25; ¶¶ 186-189, 193, 197, 207, 210. Plaintiff does not challenge and, therefore, concedes that such statements are puffery.[17]

Similarly, Plaintiff challenges the characterization of various statements as opinions, but offers no explanation in support of this conclusion. Opp. at 20.[18] Unable to refute Defendants' arguments and supporting case law, Plaintiff alternatively argues that the opinion statements are nonetheless actionable because each of the statements contains "untrue supporting facts and/or omits material facts about the Company's AWA noncompliance." Opp. at 21. Plaintiff's only specific challenge is to Leasure's September 21, 2021 remark that "we see Envigo as a best-in-class provider of high-quality research models and services." Unlike in *Fryman*, which Plaintiff

---

[16] *See W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651–52 (N.D. Ill. 2020), *aff'd sub nom. Natl. Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022) (claim that merger presented "a tremendous opportunity to drive profitable growth" was immaterial puffery); *In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 118 (D. Md. 2021), *aff'd sub nom. In re Marriott Intl., Inc.*, 31 F.4th 898 (4th Cir. 2022) (statements that merger presented "tremendous opportunity" were puffery).

[17] Plaintiff's attempt to distinguish *Ong v. Chipotle* is baffling. Opp. at 20 n.24. The statements there about defendant's commitment to safe, high quality food and food safety programs are directly analogous. Mem. at 25. Similarly, like *In re Stratasys Ltd. S'holder Sec. Litig.*, statements such as "the world's largest and most trusted sources of NHPs," are not verifiable. Mem. at 25. Plaintiff's authority offers no support. Opp. at 20 (citing *Sterling Heights*, 2013 WL 566805, at *24-25 (statement that the company was working to meet the "highest level of compliance and quality" was actionable because it was made in the context of the defendants' track record, but statements such as "redoubling commitment to quality," "raising the bar internally," and "serving to transform the company" constituted inactionable puffery); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statements that inventory was "in good shape" and "under control" did not constitute puffery because defendants knew the statements were false)).

[18] Plaintiff's primary rebuttal is that the Seventh Circuit has yet to clarify whether *Omnicare* applies to § 10(b) claims. Opp. at 20. Various court in this Circuit and around the country have applied Omnicare to § 10(b) claims. *See, e.g.*, *Fryman v. Atlas Fin. Holdings, Inc.*, 18-CV-01640, 2022 WL 1136577, at *10 (N.D. Ill. Apr. 18, 2022) (cited in Opp. at 21); *Conagra Brands*, 495 F. Supp. 3d at 648; *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1322 n.7 (11th Cir. 2019); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 610 (9th Cir. 2017); *Tongue v. Sanofi*, 816 F.3d 199, 209–10 (2d Cir. 2016).

relies on, Plaintiff fails to allege that Leasure did not subjectively hold the belief stated in his September 21 remark. Opp. at 21; 2022 WL 1136577, at *14. Nor has Plaintiff identified any supporting facts in Leasure's opinion statement, let alone any untrue ones, or identified omitted facts within the Company's knowledge that would "conflict with what a reasonable investor would take from the statement itself." Opp. at 20; *see id.* at *15, 17.[19] Additionally, Plaintiff fails to address, and therefore concedes, that the remaining opinion statements are not actionable. Mem. at 25-26; Opp. at 21. Accordingly, all of the opinion statements must be dismissed.

> ### ii.    Information About the Cumberland Facility and USAO-SDF Subpoenas Did Not Alter the Total Mix of Information.

Plaintiff completely fails to address facts and case law cited by Defendants establishing that the Cumberland Facility was not material as a matter of law. Mem. at 26. Instead, Plaintiff incorrectly contends that this is an inappropriate "factual dispute." Opp. at 22. But, as Plaintiff's own authority confirms, it is Plaintiff's burden to plead materiality. *See Pierrelouis*, 2021 WL 1608342, at *3; *No. 84 Employer-Teamster Jt. Council Pen. Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003). Importantly, Plaintiff does not dispute that the Cumberland Facility comprised less than 1% of Inotiv's total revenue, was not profitable, and was just one of 22 Envigo facilities.[20] Mem. at 26; Opp. at 22. Moreover, Plaintiff conveniently ignores analyst

---

[19] Plaintiff's cited authority cuts against its conclusory argument. *Fryman* states that in applying *Omnicare*, the court asks whether the plaintiff has alleged "that the facts supporting Defendants' opinion . . . were untrue." 2022 WL 1136577, at *17. Plaintiff asserts that the statement "contains an untrue supporting fact regarding the research quality of the Cumberland beagles" (Opp. at 21), but Leasure's statement was not even about the Cumberland Facility. ¶ 162; *see Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189–90 (2015) (opinion statement is not necessarily misleading "when an issuer knows, but fails to disclose, some fact cutting the other way" as "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts").

[20] Plaintiff's Opposition repeats the same contention that the Cumberland Facility was somehow material because it was *part of* a large business segment that, *on the whole*, accounted for a portion of revenue, ignoring Defendants' arguments pointing out that such allegations are insufficient. Opp. at 7; Mem. at 26-27 n.28; *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52-53 (2d Cir. 1995).

commentary confirming that the market did not view the Cumberland Facility as material. Mem. at 27; ¶ 263 (commenting that the decision to close the facility "*should be well-received by investors*"). Indeed, following the Company's announcement that the facility would be closed, Inotiv's stock dropped a mere 25 cents—less than 2%—and then fully rebounded the following day. Ex. X at 8; *see also* Opp. at 22 n.26 (arguing that market's reaction can indicate materiality). Furthermore, the Company's engagement with Virginia government officials and all hands response (Opp. at 22) merely confirms that the Company took the issues at the Cumberland Facility seriously and does not somehow change the materiality analysis. *In re Supreme Indus., Inc. Sec. Litig.*, 2019 WL 1436022, at *3 (N.D. Ind. Mar. 29, 2019) (materiality is analyzed from the perspective of a reasonable investor).

Further, Inotiv's stock price *rose* following its May 16, 2022 disclosure of the subpoena to OBRC. Mem. at 37. Not only does this demonstrate that the market did not view the subpoena as material, but it also means that Plaintiff cannot allege losses as a result of the alleged omission of the OBRC subpoena. Mem. at 22, 37; *see* Opp. at 22 n.26. Plaintiff does not and cannot argue otherwise.

### iii.    The PSLRA Safe Harbor Applies to Defendants' Forward-Looking Statements.

Finally, as explained in the Memorandum, Defendants' forward-looking statements regarding future potential benefits of the Envigo and OBRC acquisitions and intent to eventually rebrand are shielded by the PSLRA's safe harbor. 15 U.S.C. § 78u-5(c)(1).[21] Plaintiff does not

---

[21] Plaintiff claims that Defendants did not specify which portions of statements are forward looking (Opp. at 23), but the Memorandum clearly identifies these statements. Mem. at 28 n.29. Plaintiff also oppositely criticizes Defendants elsewhere in the Opposition for "cherry-picking" statements or portions of them. *See* Opp. at 21. The FAC is nearly 150 pages of shotgun pleading and quotes pages of statements, often without specifying which portions of statements were misleading or why. As such, Defendants had no choice but to identify the portions of the statements Plaintiff appears to challenge.

contest that the statements were forward looking and identified as such, and utterly fails to argue that Defendants had "actual knowledge" of falsity. Opp. at 23 n.27; Mem. at 28. While Plaintiff refers to Inotiv's risk disclosures as "boilerplate" (Opp. at 18), as discussed above, Inotiv made meaningful cautionary disclosures regarding acquisitions, integration, and supply risks. Mem. at 28; *see In re Midway Games*, 332 F. Supp. 2d at 1167.[22] Moreover, to qualify for the safe harbor, the language need not explicitly refer to the risk that ultimately came to fruition, "it is sufficient that the language warned of risks of a significance similar to that actually realized." *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 843 (N.D. Ill. 2003). In sum, Plaintiff cannot state a claim based on any of the alleged misrepresentations or omissions because they are nonactionable, immaterial statements.

III.    **PLAINTIFF FAILS TO RAISE A COGENT OR COMPELLING INFERENCE OF SCIENTER.**

Incapable of alleging a cogent or compelling inference of scienter, Plaintiff cites purported scienter allegations that add nothing and incorrectly claims that Defendants failed to address various allegations.[23] Not a single one of Plaintiff's purported bases for scienter is recognized by the law or supported by particularized, contemporaneous facts. Rather, Plaintiff's scienter allegations add up to nothing more than unsupported assumptions about what Defendants "must have" or "would have" known. Further, various facts that Plaintiff cannot explain away directly

---

[22] Unlike in *Pierrelouis* (Opp. at 23), Inotiv's risk disclosures suggested caution, not confidence, when it came to compliance with governmental regulations and warned of current supply risks. Mem. at 12-14.

[23] Plaintiff falsely asserts that Defendants do not contest scienter on eight bases. Opp. at 24-25. Defendants explicitly explained why arguments 1–5 and 8 are insufficient. Mem. at 30-32. Points 6 and 7 were not pleaded as scienter allegations in the FAC and, regardless, are not even close to sufficient. If "speaking on behalf of the Company" supported an inference of scienter, every executive on Wall Street would potentially have scienter. Opp. at 25 n.28. Nor did the court in *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC* hold as much. 587 F. Supp. 3d 56, 97-98 (S.D.N.Y. 2022) (scienter was supported by unrelated allegations including a related criminal conviction). *Hedick v. Kraft Heinz Co.* similarly based its finding of scienter on much more than participating in conference calls. 19-CV-1339, 2021 WL 3566602, at *11-14 (N.D. Ill. Aug. 11, 2021).

undercut any inference of scienter. The FAC's § 10(b) and 20(a) claims can and should be dismissed on this basis alone.

### A.    The Due Diligence Tour, Public Congressional Testimony, Public Lobbying Efforts, and Receipt of Subpoenas Are Not Sufficient to Allege Scienter.

As explained in Defendants' Memorandum, the mere fact that Leasure and Sagartz participated in a due diligence tour does not support the conclusion that either knew about purported conditions at the Cumberland Facility, the subpoenas, or the scope of the USAO-SDF investigation. Mem. at 30-32; Opp. at 25-26, 33-34. Rather than particularized facts, Plaintiff merely recites the same unsupported conclusions that conditions at the Cumberland Facility "would have been impossible to miss" and that "Defendants learned or would have learned of" information through the due diligence process. Opp. at 26, 30; Mem. at 26.[24] But, "Plaintiff must allege actual knowledge by the [D]efendants, not some second-hand belief that such knowledge existed." Mem. at 30-32.[25] Indeed, Plaintiff fails to distinguish the plethora of cited cases holding that "must have known" allegations are insufficient. Mem. at 30-31; *see also Fifth Third Bancorp*, 2022 WL 1642221 at *22 (knowledge of investigation into alleged illegal practices does not equate to knowledge of those practices themselves).

Further, there are myriad issues with the CW allegations underlying these unsupported conclusions. None of the CWs are alleged to have had relevant interactions with the Individual

---

[24] The single case Plaintiff cites in support of these baseless conclusions, *Miller v. Material Scis. Corp.*, is wholly inapplicable here. Opp. at 26. There, the plaintiff alleged that written presentations showed that the defendant reviewed materials demonstrating oddities in the company's books and records that constituted evidence of fraud. *Miller v. Material Scis. Corp.*, 9 F. Supp. 2d 925, 927–28 (N.D. Ill. 1998). Plaintiff's "would have" allegations here do not come close.

[25] Plaintiff erroneously attempts to distinguish *Plumbers & Pipefitters Loc. Union v. Zimmer*, which held that actual knowledge, as opposed to a second-hand belief that such knowledge exists, is required to adequately allege scienter, by asserting that it addressed forward-looking statements (Opp. at 28 n.29), but the cited portion of *Zimmer* makes no mention of forward-looking statements. 673 F. Supp. 718, 747 (S.D. Ind. 2008).

Defendants and their anecdotal allegations about the Cumberland Facility, USAO-SDF investigation, and Tucker matter do not coincide with the statements at issue. Mem. at 30-31. Plaintiff further asks the Court to assume that the tours of the Cumberland Facility and Texas primate facility were similar to a tour of an Envigo facility in St. Louis, Missouri. Opp. at 30. Even if such assumptions were permissible under the PSLRA (they are not), CW2 does not allege that legal or regulatory matters were discussed during the St. Louis tour. ¶ 130. Plaintiff also still fails to explain how visiting a facility would necessarily alert a Defendant to the fact that the company had received a subpoena. Even crediting CW1's vague allegation that the USAO-SDF investigation and the Tucker matter were "general knowledge," Plaintiff still fails to allege that any such information was provided to Defendants. Mem. at 30; Opp. at 27 (referencing "extensive business information"). It further defies common sense to assume that Defendants understood the focus of the USAO-SDF investigation or predicted an indictment and its collateral consequences, even if they were aware of the subpoenas. Once again, Plaintiff is asking the Court to make illogical leaps that are not permitted under the PSLRA.[26] Plaintiff's claim that the CWs support a strong inference of scienter by "supplementing the description of the Due Diligence Tour in the Proxy" (Opp. at 29) is similarly nonsensical, given that any information disclosed in the proxy was necessarily public.

As a last ditch effort, Plaintiff points to congressional testimony, lobbying efforts, and Harkness's retirement—none of which demonstrates scienter. Opp. at 26-28. Publicly addressing the Cumberland Facility does not demonstrate that Defendants were previously aware of, and

---

[26] Tellingly, Plaintiff cites just one distinguishable case for the proposition that receipt of a DOJ subpoena can be "'one more piece of the puzzle.'" Opp. at 34 (citing *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 114-15 (D. Mass. 2014) (subpoena and related investigation concerned the defendant and plaintiff alleged other evidence of scienter). The other cases Plaintiff cites involved more than mere receipt of a subpoena and, critically, the investigations were of the defendant. Opp. at 34 n.34.

sought to conceal, anything. *See Higginbotham*, 495 F.3d at 760 (hiring an accounting firm to strengthen financial controls did not show that previous controls were recognized as deficient). Indeed, publicly addressing something is wholly inconsistent with any intent to conceal it.[27] Plaintiff next asserts that the retirement of Jim Harkness raises a strong inference of scienter. Opp. at 27-28. Unsurprisingly, Plaintiff cites no case holding that a retirement, on its own, can raise an inference of scienter and, as noted, Plaintiff does not allege additional evidence. *Id.* Further, while Plaintiff characterizes the retirement as abrupt and sudden (without support), Plaintiff ignores that Harkness remained employed by the Company for an entire quarter after his retirement was announced, until September 30, 2022.[28]

### B.    Plaintiff's Core Operations Allegations Still Fail.

Contrary to Plaintiff's assertion, Defendants strongly dispute that statements regarding NHPs concern "core operations" for purposes of scienter. Opp. at 30. However, the FAC did not allege that the NHP business constituted a core operation, let alone that the subpoenas were somehow critical to that business. *See* ¶¶ 244-45. Plaintiff's assertion that the entire RMS segment and the production and importation of research animals constituted a core operation (¶ 244; Opp. at 30-31) is not sufficient. *See* Mem. at 32-33. Further, Plaintiff cannot demonstrate that subpoenas constitute information that is so "critical" to a core operation or that it is "almost inconceivable" that the Individual Defendants would be unaware of them. *See* Opp. at 31 (quoting *Jones* and *Desai*).

---

[27] *Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 661 (N.D. Ill. 2015) (Opp. at 22) is completely distinguishable. There, the plaintiff alleged that the defendant's CEO made statements in a meeting that demonstrated that he did not actually believe in the efficacy of the company's product, despite publicly stating that he did.

[28] Inotiv, Inc. Schedule 14A filed Jan. 30, 2023, available at https://www.sec.gov/Archives/edgar/data/720154/000110465923007554/tm234576d2_def14a.ht.

Plaintiff fails to address Defendants core operations allegations with respect to the Cumberland Facility. Mem. at 32-33. Rather, Plaintiff inexplicably continues to argue that the Cumberland Facility was a core operation by relying on revenue associated with the entire RMS segment and information on the industry as a whole—neither of which are sufficient. Opp. at 32. In short, Plaintiff fails to allege a single fact demonstrating that the Cumberland Facility was critical to Inotiv's core operations. To the contrary, the small size of the Cumberland Facility only undercuts any suggestion that Defendants had reason to conceal information relating to the facility. *See Zimmer*, 673 F. Supp. 2d at 748-49.[29]

### C.    Multiple Facts Weigh Against Any Inference of Scienter.

Not only has Plaintiff failed to allege a "powerful or cogent" inference of scienter, but when viewing all relevant facts holistically, it is clear that Plaintiff has not met the "demanding" requirements under the PSLRA. *Tellabs, Inc. v. Makor Issues & Rts., Ltd*, 551 U.S. 308, 323-24 (2007). For example, three of the four the Individual Defendants *purchased* stock during the class period and none sold a single share. Plaintiff asserts that the purchases were relatively small compared to Defendants' other holdings. Opp. at 33. However, these purchases are significant, as the FAC does not otherwise allege any inference of scienter. *See Conagra*, 495 F. Supp. 3d at 666-67.[30] Additionally, Inotiv made timely disclosures that warned investors of the relevant risks; sent

---

[29] Plaintiff's attempt to distinguish *Zimmer*, *Caterpillar*, and *Stavros* fails. Opp. at 31 n.31 (citing *Zimmer*, 673 F. Supp. 2d at 725 (products accounting for 6% of defendant's business did not constitute core operations); *Stavros*, 266 F. Supp. 2d at 851 (inflation of revenue by 3% did not raise a strong inference of scienter)); *Caterpillar, Inc.*, 2018 WL 4616356, at *8 ("senior positions" alone "do not suggest scienter")). *See also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 206 (1st Cir. 1999) (4% did not support a strong inference of scienter); *In re Allscripts, Inc. Secs. Litig.*, No. 00 C 6796, 2001 WL 743411, at *10–11 (N.D. Ill. June 29, 2001) (4% adjustment did not support scienter).

[30] *Pierrelouis* (Opp. at 33) is not applicable here because the plaintiff alleged facts suggesting a strong inference of fraudulent intent irrespective of any stock purchases. 2021 WL 1608342 at *7 (scienter alleged where defendants made private statements showing awareness of allegedly concealed problem, the product at issue was central to the company's success, the problem was widespread, the timing of product rollout was critical, and any disruption to rollout plans endangered the company's overall financial position).

internal communications to employees about issues at the Cumberland Facility, which Plaintiff does not dispute directly cuts against an intent to conceal; and had no reason to conceal the issues at Cumberland given its small size and unprofitability. Mem. at 32-33. These facts, combined with the lack of a single damning internal report, suspicious stock sale by an insider, or first-hand knowledge of any alleged fraud, make clear that the FAC must be dismissed for failure to adequately allege scienter.

## IV.    PLAINTIFF HAS NOT ALLEGED LOSS CAUSATION.

Plaintiff's allegations invariably fail to satisfy one or both of the requirements to allege loss causation: (1) a corrective disclosure that relates back to or corrects a previous fraudulent statement; and (2) a drop in the price of the stock following the corrective disclosure.[31] *Ray v. Citigroup Glob. Mkts., Inc.*, 482 F.3d 991, 995 (7th Cir. 2007). ***First***, the announcements on November 15, 2021, and June 13, 2022, cannot constitute corrective disclosures because Inotiv's stock price quickly rebounded after an initial loss. Mem. at 34, 36-37. Plaintiff characterizes this as a "premature factual dispute" (Opp. at 36, 38-39), but various courts have dismissed claims where the stock price rebounded. Mem. at 34-35; *see also Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1136 (S.D. Ind. 2012) (plaintiff failed to connect revelation of the alleged fraud to any meaningful dip in stock price where the stock rebounded two days later).[32] ***Second***, Plaintiff does

---

[31] The fact that Inotiv's stock price did not fall in the aftermath of certain alleged corrective disclosures is not an inappropriate factual dispute. *See* Opp. at 36. Such stock prices are a matter of public record, which the Court can take judicial notice of and consider in ruling on Defendants' Motion. *See* Mem. at 3 n.2.

[32] Additionally, Inotiv's stock fell less than 2%, or 25 cents, as a result of the June 13, 2022 announcement. Plaintiff asserts that *Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 669 (E.D. Va. 2021) stands for the proposition that the size of a stock's drop is not a consideration at the pleading stage. Opp. at 39. However, the court did not hold that the size of a stock drop cannot be considered on a motion to dismiss. Moreover, unlike here, the issuer's "share price declined following each disclosure of new negative information." Further, analysts reported that Inotiv's June 13, 2022 decision to close the facility was "well-received by investors," not viewed as a disclosure of fraud. ¶ 263.

not dispute that Inotiv's December 21, 2021 Form 10-K disclosed the *exact same risks* as the February 16, 2022 Form 10-Q, and that the stock price *rose* following the initial disclosure. *See* Opp. at 37-38; Mem. at 35. Plaintiff argues that the disclosures were in *different places* in the relevant filings and that February 16, 2022 was the first concurrent disclosure of the criminal subpoena and the USDA investigation, but Plaintiff fails to explain how either could possibly make a material difference to a reasonable investor. Opp. at 38 n.41.[33] Further, Plaintiff acknowledges that the USAO-SDF investigation was public as early as June 2021 and fails to explain how the subpoena revealed previously concealed fraud.[34] ¶¶ 112-14; Mem. at 35. **Third**, Plaintiff contends that the May 20-21, 2022 disclosure of DOJ actions "revealed the truth of Defendants' misrepresentations and omissions regarding the Cumberland Facility." Opp. at 38. However, Plaintiff also asserts that the DOJ action reported conditions "that were consistent with, if not substantially identical to, the reports of USDA inspections carried out prior to and during the Class Period," which were previously disclosed. ¶ 101; Mem. at 36. **Finally**, Plaintiff asserts, without support, that the November 17, 2022 disclosure revealed that Defendants previously concealed that the USAO-SDF investigation was focused on Inotiv's supplier. Opp. at 39. However, the disclosure merely referenced the recently unsealed indictment and, as noted, Plaintiff does not allege a single fact tending to show that Defendants were previously aware that the investigation

---

[33] Plaintiff incorrectly asserts that a $413 million line item for Contingencies associated with the Cumberland Facility and the subpoena to Envigo was included in the February 16, 2022 Form 10-Q. Opp. at 38 n.41. One glance at the relevant balance sheet shows that $413 million was the amount of total liabilities, and that no amount was recorded for contingencies. Inotiv, Inc. Form 10-Q, filed Feb. 16, 2022, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000720154/cd0a431d-dcaa-46e1-82f6-f80a5eb7a9a7.pdf.

[34] The fact that the market did not react negatively to the May 16, 2022 disclosure of the OBRC subpoena means that Plaintiff cannot allege loss causation with respect to failure to disclose the subpoena and further supports Defendants' argument that receipt of a subpoena is not material information that should have been disclosed earlier. Mem. at 37; *supra* Section II.B.iii.

was focused on the supplier. Mem. at 37; *supra* Section I.B. In short, Plaintiff's own allegations and publicly available information demonstrate that Plaintiff cannot allege loss causation.

## V.     PLAINTIFF'S SECTION 14(A) CLAIM ALSO FAILS.

Plaintiff's 14(a) claim must fail because it rests entirely on the same faulty and inadequately alleged misstatements and omissions discussed above. *Supra* Section II.B. As for loss causation, Plaintiff now abandons the FAC's insufficient claim that shareholders approved the Envigo acquisition for more than its true value. ¶¶ 318-19; *see* Mem. at 38-39. The Opposition now asserts that the FAC has pled loss causation based on "the amount by which Inotiv's stock price fell in response to revelations concerning Envigo's operations." Opp. at 40. This theory fails for the reasons set forth above (*supra* Section IV), as well as the fact that it lacks a sufficient nexus between the acquisition and the loss. *See, e.g.*, *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *22 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002) (proxy transaction must be the "'direct cause of the pecuniary injury for which recovery is sought'"); *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 797 (11th Cir. 2010) (affirming dismissal for failure "to allege a link between the proxy solicitation and the shareholders' loss").

## VI.    PLAINTIFF'S SECTION 20(A) CLAIM MUST ALSO FAIL.

Finally, Plaintiff's § 20(a) claims must also be dismissed because they are predicated on violations of § 10(b) and § 14(a) which Plaintiff has failed to adequately plead.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC in its entirety, with prejudice.

Dated: April 28, 2023                                    Respectfully submitted,

                                                        */s/ Michael J. Diver*
                                                        *Lead Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on this 28th day of April, 2023, a true and correct copy of the foregoing

document was served on all counsel of record through the Court's CM/ECF system.

*/s/ Michael J. Diver*
_____