**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | |
|---|---|
| *In re* INOTIV, INC. SECURITIES LITIGATION | Case No. 4:22-cv-00045-PPS-JEM |

**DECLARATION OF STEVEN J. BUTTACAVOLI IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE OF THE SETTLEMENT**

I, Steven J. Buttacavoli, hereby declare and state as follows:

1.     I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts and I am admitted *pro hac vice* in the above-captioned action (the "Action"). I am a partner in the law firm Berman Tabacco, the Court-appointed Lead Plaintiff's Counsel in this Action. I make this Declaration in support of Lead Plaintiff's Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement.[1]

2.     The purpose of this declaration is to summarize the factual and procedural history of this Action, including the investigation and filing of this litigation, motion to dismiss proceedings, discovery, mediation, and settlement negotiations.

3.     This matter commenced on June 23, 2022 with the filing of the initial complaint (ECF No. 1).

4.     On September 12, 2022, the Court appointed Oklahoma Police Pension and Retirement System ("Oklahoma Police" or "Lead Plaintiff") as Lead Plaintiff and approved

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated September 25, 2025 (the "Stipulation"), attached hereto as Exhibit 1.

1

Berman Tabacco as Lead Counsel and CohenMalad, LLP as Liaison Counsel for the class. (ECF No. 37).

5. Since the inception of this case, Berman Tabacco has aggressively investigated and prosecuted the claims in this Action on behalf of the class. The firm has investigated potential claims by, among other things, reviewing news articles, analyst reports, and other publicly available information concerning the allegations and interviewing a number of former Inotiv, Inc. ("Inotiv") and Envigo RMS Holding Corp. ("Envigo") employees; researched and analyzed potential claims; drafted the Amended Complaint; successfully opposed Defendants' motion to dismiss; consulted with our experts/consultants on topics of market efficiency, loss causation, damages and accounting; conducted discovery; and engaged in a full-day mediation session and subsequent settlement negotiations. Berman Tabacco has prosecuted and will continue to prosecute this Action vigorously on behalf of Lead Plaintiff and the proposed Settlement Class, representing the interests of the class fairly and adequately, and will continue to commit the resources necessary to resolve this case on the best terms possible for members of the Settlement Class.

6. The Defendants in this matter, Inotiv, Robert W. Leasure, Beth A. Taylor, John E. Sagartz, and Carmen Wilbourn (collectively, "Defendants"), have been represented by experienced defense counsel who have contested this matter and defended it well from the outset.

7. On November 13, 2022, after extensive investigation by Lead Counsel, Lead Plaintiff filed an Amended Class Action Complaint for Violations of the Federal Securities Laws, which asserted the following claims: (1) Violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (against all Defendants); (2) Violations of Section 14(a) of

the Exchange Act (against Defendants Inotiv, Leasure, and Taylor); and (3) "control person" claims under Section 20(a) of the Exchange Act (against Defendants Leasure and Taylor). Three days later, Inotiv announced the indictment of certain employees of its principal supplier of "non-human primates." As a result of this news, Lead Plaintiff sought—and obtained—leave of court to file a First Amended Class Action Complaint for Violations of the Federal Securities Laws (the "FAC"), which was filed on November 23, 2022. (ECF No. 53). The FAC is the operative complaint in this Action.

8. On January 27, 2023, Defendants moved to dismiss the FAC. (ECF No. 67). Lead Plaintiff opposed Defendants' motion on March 28, 2023. (ECF No. 73). On March 29, 2024, the Court entered an Opinion and Order denying the Defendants' Motion. (ECF No. 75).

9. Defendants filed their Answer and Affirmative Defenses to the FAC on May 31, 2024. (ECF No. 85).

10. On April 26, 2024, the Parties submitted their Joint Rule 26(f) Report. On April 29, 2024, the Court issued a Scheduling Order (the "Scheduling Order") establishing certain case management deadlines and otherwise approving and adopting all other dates and deadlines through the close of discovery set forth in the April 24, 2024 Rule 26(f) Report of Parties' Planning Meeting. Shortly thereafter, the Parties commenced the discovery phase. (ECF No. 82).

11. After Lead Plaintiff served its initial document requests on the Defendants on May 13, 2024, the Parties engaged in multiple telephonic discovery conferences that, among other things, focused on the Parties' disagreement over the scope of the claims remaining in the Action and the relevance of Lead Plaintiffs' discovery requests. Defendants began their

production of documents to Lead Plaintiff in late September 2024. In total, Defendants produced approximately 60,000 documents to Lead Plaintiff.

12. Against the backdrop of Inotiv's ongoing financial difficulties and, in anticipation of an upcoming January 2025 deadline to identify a mediator set forth in the Scheduling Order, the Parties began to discuss the possibility of mediation in September 2024. Shortly thereafter, the Parties scheduled an in-person mediation to take place in New York City on February 24, 2025 in New York City before a nationally-recognized mediator, Mr. Robert A. Meyer, Esq. (the "February 2025 Mediation Session"). Prior to the February 2025 Mediation Session, the parties submitted detailed mediation statements. While the February 2025 Mediation Session did not result in a settlement, the parties continued settlement discussions over the course of the months that followed with Mr. Meyer's guidance and supervision.

13. On September 25, the Parties reached an agreement to settle the Action for $8,750,000, subject to approval by this Court.

14. Both before and after filing the FAC, Lead Plaintiff, through Lead Counsel, undertook a thorough investigation, including, inter alia: (a) interviews with numerous former employees of Inotiv and Envigo; (b) consultation with a loss causation and damages consultant for the purpose of accessing causation and potential damages; (c) detailed reviews of Inotiv's public filings, annual reports, press releases, and other public statements; (d) review of analysts' reports and articles in the financial press relating to Inotiv; (e) research of the applicable law with respect to the claims asserted in the FAC and the potential defenses thereto; and (f) legal research and briefing both in preparing an opposition to Defendants' motion to dismiss and motion for class certification.

15.    In addition, Lead Counsel also consulted extensively with its loss causation/damages expert with regard to the claims asserted in the FAC to support its motion for class certification and to prepare the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), which is described in the Notice of Pendency of Class Action and Proposed Settlement (the "Long Form Notice"), attached hereto as **Exhibit 1.A-1**.

16.    To estimate price inflation during the Settlement Class Period, Lead Plaintiff's damages consultant performed an event study of the alleged corrective event, and Company-specific returns were estimated using a regression analysis, which measures the relationship between Inotiv stock returns and (i) changes in market-wide factors that would be expected to impact all stocks; and (ii) changes in industry-wide factors that would be expected to impact stock in Inotiv's sector.  Then, the Company-specific returns (i.e., net of market and industry effects) observed on the corrective event date formed the basis of the estimate of price inflation present during the Settlement Class Period, subject to modification based on the market reaction to any confounding news released on the same date.  Then, to estimate aggregate class-wide damages under Sections 10(b) and 14(a), the timing and quantity of investor transactions in Inotiv common stock during the Settlement Class Period were estimated using the proportional "80/20 Multi-Trader Model," which posits two active traders with different holdings and propensities to trade.  The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (i.e., they hold 80% of the shares available, but trade 20% of the volume) and a small set of "fast" traders (i.e., they hold 20% of shares available, but trade 80% of the volume).  Applying the theory of per-share damages to the daily trading behavior predicted by the 80/20 Multi-Trader Model, aggregate damages under Sections 10(b) and 14(a) are estimated to be as much as $64.90 million, based on 13.106 million damaged shares.

17. Based on these estimates, the $8,750,000 recovery under the proposed Settlement constitutes nearly 13.5% of the Class's maximum likely recoverable damages, assuming Lead Plaintiff prevailed on all claims against the Defendants and certified the Settlement Class Period.

18. Given the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict, Lead Counsel believes that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Based on their experience and close knowledge of the facts and applicable law and defenses, Lead Counsel and Lead Plaintiff have determined that the Settlement is in the best interest of the Settlement Class. As described below, at the time the Settlement was reached, there were significant risks facing Lead Plaintiff with respect to establishing both liability and damages.

19. In agreeing to settle, Lead Plaintiff and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving materiality, falsity, and damages; (ii) Defendants' inevitable challenges to class certification and truth on the market defense, and the delays involved in the inevitable appeals of class certification; (iii) the fact that, even if Lead Plaintiff prevailed at summary judgment and/or trial, any monetary recovery could have been less than the Settlement Amount and the delays that would follow even a favorable judgment including appeals. Lead Plaintiff and Lead Counsel also considered the numerous defenses asserted by Defendants on the merits. For example, Defendants maintain that they made no actionable misrepresentations, that any alleged violations at the Envigo Cumberland Facility were known and immaterial to investors before the close of the Class Period or Settlement Class Period, that Defendants did not act with the requisite scienter, that Defendants are not liable for any alleged damages, and that Lead Plaintiff and the Settlement Class were not damaged.

6

20.     Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues ranging from animal welfare compliance to loss causation and damages.  If the trier of fact were to find Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims.  Moreover, if the trier of fact is persuaded by Defendants' likely truth-on-the market defense—including, for example, the argument that investors understood the risks associated with the Cumberland Facility based on publicly available information from before and during the Class Period—this could potentially reduce the total compensable pool of damages to near zero.

21.     Lead Counsel intends to request an award of attorneys' fees of no greater than 25% of the settlement amount (approximately $2,187,500).

22.     The Plan of Allocation assumes that the price of Inotiv common stock was artificially inflated throughout the Settlement Class Period.  The computation of the estimated alleged artificial inflation in the price of Inotiv common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff.  The Plan of Allocation sets forth Recognized Loss estimates based on Lead Plaintiff's determination, based on consultation with its damages consultant, that a corrective disclosure removed artificial inflation from the price of Inotiv common stock on May 20, 2022 (the "Corrective Disclosure Date").  Thus, for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Inotiv common stock must have either (i) been purchased or acquired during the Settlement Class Period and held through the Corrective Disclosure Date; or (ii) been held of record or

beneficially owned as of the close of trading on October 4, 2021 and held through the Corrective Disclosure Date.

23.    Under the Plan of Allocation, persons and entities who purchased Inotiv common stock during the Class Period or held Inotiv common stock as of the record date of October 4, 2021, are potentially eligible to share in the distribution of the Net Settlement Fund, if they submit valid claim forms.  The Plan of Allocation describes the method of calculating each Claimant's Recognized Loss for each share of Inotiv purchased or held during the Settlement Class Period, as well as their *pro rata* share of the Net Settlement Fund.  Specifically, the Net Settlement Fund is to be allocated in proportion to the Recognized Loss calculated by the Claims Administrator for each Authorized Claimant.  Each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, and multiplied by the total amount in the Net Settlement Fund.

24.    The per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that Lead Plaintiff's damages consultant calculated for litigation purposes and as the estimated maximum amounts of damages Settlement Class Members could likely recover at trial.  Thus, I am informed and believe that the Plan of Allocation provides an equitable and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund among Claimants who suffered economic losses as a result of the alleged fraud.

25.    The Parties have met and conferred and Lead Plaintiff's Motion is unopposed by Defendants.  Defendants take no position on any of the calculations contained in this declaration, including Lead Counsel's calculations of likely recoverable damages under the Plan of

Allocation, average distribution per share, attorneys' fees per share or estimated administration costs.

26. Lead Plaintiff has retained an experienced Claims Administrator, Angeion Group LLC. *See* Declaration of Brett Wilmont on Angeion Group, LLC Qualifications & Proposed Notice Plan, attached hereto as Exhibit 3.

27. Attached hereto are true and correct copies of the following documents:

    a. A true and correct copy of the fully executed Stipulation and Agreement of Settlement, dated September 25, 2025 (**Exhibit 1**) along with the following related sub-exhibits:

        i. [Proposed] Order Preliminarily Approving Settlement And Providing for Class Notice (**Exhibit A**);

        ii. Notice of Pendency of Class Action and Proposed Settlement (the "Long Form Notice") (**Exhibit A-1**);

        iii. Proof of Claim and Release Form (the "Claim Form") (**Exhibit A-2**);

        iv. E-Mail Notice (**Exhibit A-3**);

        v. Postcard Notice (**Exhibit A-4**);

        vi. Summary Notice (**Exhibit A-5**);

        vii. Final Judgment Approving Class Action Settlement (**Exhibit B**);

    b. Declaration of Ginger Sigler on behalf of Oklahoma Police Pension and Retirement System (**Exhibit 2**);

    c. Declaration of Brett Wilmont on Angeion Group LLC Qualifications & Proposed Notice Plan (**Exhibit 3**); and

    d.   Cornerstone Research, "Securities Class Action Settlements: 2024 Review and Analysis" (**Exhibit 4**).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this, the 25th day of September, 2025, at Boston, Massachusetts.

*/s/ Steven J. Buttacavoli*
Steven J. Buttacavoli

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of September, 2025, a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system.

Dated: September 25, 2025                    */s/ Steven J. Buttacavoli*
                                                   Steven J. Buttacavoli