**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE**

*In re* INOTIV, INC. SECURITIES
LITIGATION

Case No. 4:22-cv-00045-PPS-JEM

**DECLARATION OF STEVEN J. BUTTACAVOLI IN SUPPORT OF
(I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION AND CERTIFICATION OF THE
SETTLEMENT CLASS; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD
<u>TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. § 78u-4(a)(4)</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 2

II.     HISTORY OF ACTION .......................................................................................... 5

III.    SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT OF THE ACTION........... 6

IV.     COMPLIANCE WITH PRELIMINARY APPROVAL ORDER....................................... 7

V.      RISK FACTORS .................................................................................................... 10

VI.     PLAN OF ALLOCATION ...................................................................................... 15

VII.    APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF
        LITIGATIONEXPENSES......................................................................................... 16

VIII.   REIMBURSEMENT OF THE EXPENSES OF LEAD PLAINTIFF OKLAHOMA
        POLICE IS FAIR AND REASONABLE..................................................................... 22

IX.     REACTION OF THE SETTLEMENT CLASS.............................................................. 23

i

**LIST OF EXHIBITS**

Exhibit 1    Declaration of Dawn M. Cody Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date;

Exhibit 2    Berman Tabacco Firm Resume;

Exhibit 3    Declaration of Scott D. Gilchrist in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of CohenMalad LLP;

Exhibit 4    Declaration of Ginger Sigler on Behalf of Oklahoma Police Pension and Retirement System in Support of Motion for Final Approval of Class Action Settlement and an Award of Attorneys' Fees and Expenses;

Exhibit 5    Cornerstone Research, "2024 Review & Analysis: Securities Class Action Settlements"

Exhibit 6    Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024 Full-Year Review, NERA (Jan. 23, 2024)

I, Steven J. Buttacavoli, hereby declare and state as follows:

1.     I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts and I am admitted *pro hac vice* in the above-captioned action (the "Action").  I am a partner in the law firm Berman Tabacco, counsel for Lead Plaintiff Oklahoma Police Pension and Retirement System ("Oklahoma Police" or "Lead Plaintiff") and the Court-appointed Lead Counsel in this Action.  I make this Declaration in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Certification of the Settlement Class; and Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff Pursuant to 15 US.C. § 78u-4(a)(4).[1]

2.     The purpose of this declaration is to summarize the factual and procedural history of this Action, including the investigation and filing of this litigation, motion to dismiss proceedings, discovery, mediation, and settlement negotiations.

3.     For the reasons discussed herein and in the memoranda of law filed concurrently herewith, I, on behalf of Lead Counsel, respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be finally approved by the Court; (ii) the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved by the Court; (iii) the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) and should be certified to effectuate the Settlement; and (iv) the attorneys' fees and expenses sought in the Fee & Expense Motion are reasonable, supported by the facts and the law, and should be granted.

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated September 25, 2025 (ECF No. 110-1, the "Stipulation").

## I.      INTRODUCTION

4.      The proposed Settlement before the Court provides for a resolution of all claims in the Action in exchange for a cash payment of $8,750,000 for the benefit of the Settlement Class. Lead Counsel respectfully submits that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks in the Action.  As explained herein, the Settlement provides a considerable benefit to the Class by conferring a substantial, certain, and immediate recovery while avoiding the significant risks and expense of continued litigation, including that the Settlement Class could recover nothing, or less than the Settlement Amount, after years of additional litigation and delay.

5.      The Settlement is the result of extensive efforts by Lead Plaintiff and Lead Counsel, which included, among other things detailed herein: (i) conducting a comprehensive investigation into the alleged wrongful acts, (ii) reviewing and analyzing Inotiv, Inc.'s ("Inotiv" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, analyst reports, and media reports about the Company; (iii) interviewing former Inotiv employees and former employees of companies that were acquired by Inotiv, including but not limited to Envigo; (iv) reviewing records of regulatory actions and federal court proceedings related to Inotiv's Cumberland Facility and matters concerning the Company's business importing non-human primates; (v) drafting an amended complaint, including the operative, 135-page, First Amended Class Action Complaint for Violations of the Federal Securities Laws; (vi) successfully briefing Lead Plaintiff's opposition to Defendants' Motion to Dismiss; (vii) engaging with consulting experts and briefing Lead Plaintiff's Motion for Class Certification; (viii) engaging in discovery, including reviewing and analyzing approximately 60,000 documents produced by Defendants to Lead Plaintiff and reviewing and producing documents in response to discovery served on Lead Plaintiff; (ix) participating in an in-person mediation session and preparing detailed

submissions to the Mediator; (x) engaging in numerous telephonic negotiations regarding the terms of the proposed Settlement; and (xi) working with a damages consulting expert to create a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly.

6.      Further, in reaching the Settlement, Lead Plaintiff and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving the required elements of materiality, falsity, scienter, loss causation, and damages; (ii) the difficulties in overcoming Defendants' challenges to class certification and the delays involved in the inevitable appeals of a decision on class certification; (iii) the fact that, even if Lead Plaintiff prevailed at summary Judgment and trial, any monetary recovery could have been less than the Settlement Amount; (iv) the ability to collect and enforce a judgment in an amount greater than the Settlement Amount given Inotiv's ongoing warnings to investors that Company's ability to remain a "going concern" is at risk; and (v) the delays that would follow even a favorable judgment including appeals.

7.      As a result of the efforts and considerations summarized in the preceding two paragraphs and as more fully set forth herein, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims and defenses in the Action at the time they reached the proposed Settlement.   The Settlement was reached only after extensive arm's length negotiations that were assisted by an experienced mediator, Robert A. Meyer, Esq. of JAMS, Inc. ("Meyer" or the "Mediator").   Lead Plaintiff and Lead Counsel believe that the Settlement represents a very favorable outcome for the Settlement Class and that its approval is in the best interest of the Settlement Class.

8.      As discussed in further detail below, the Plan of Allocation was developed with the assistance of Lead Plaintiff's damages expert and provides for the distribution of the Net

Settlement Fund to Class Members who submit timely Claim Forms that are approved for payment on a *pro rata* basis based on Claimants' losses that are attributable to the alleged fraud or the misrepresentations and omissions in the Proxy issued in connection with Inotiv's November 2021 acquisition of Envigo.

9. With respect to the Fee & Expense Motion, as discussed in the memorandum in support of the Fee & Expense Motion, the requested fee of 25% of the Settlement Fund is the percentage set forth in the attorneys' fees provision in Lead Plaintiff's retainer agreement with Berman Tabacco and is well within the range of percentage awards granted by courts in this Circuit. Additionally, the fee requested represents a negative multiplier of 0.6 on Lead Plaintiff's counsel's collective lodestar, which is below or within the range of fee awards that have been accepted in this Circuit.

10. On October 3, 2025, this Court preliminarily approved the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the program for providing Notice to the Settlement Class. *See* ECF No. 112. While the deadline to submit objections and requests for exclusion has not passed, to date, no Settlement Class Member has objected to the Settlement or Plan of Allocation, and the Court-appointed Claims Administrator has not received any requests for exclusion.

11. For the reasons set forth herein and in the accompanying memoranda, including with respect to the quality of the result obtained in light of the numerous significant litigation risks, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved. In addition, Lead Counsel respectfully submits that their request for attorneys' fees, reimbursement of litigation expenses, and award to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(A)(4) are reasonable and should be approved.

## II.     HISTORY OF ACTION

12.     This matter commenced on June 23, 2022 with the filing of an initial complaint. ECF No. 1.

13.     On September 12, 2022, pursuant to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court appointed Oklahoma Police as Lead Plaintiff and approved Berman Tabacco as Lead Counsel and CohenMalad, LLP as Liaison Counsel for the class.  ECF No. 37.

14.     The Defendants in this matter, Inotiv, Robert W. Leasure, Beth A. Taylor, John E. Sagartz, and Carmen Wilbourn (collectively, "Defendants"), have been represented by experienced defense counsel who have contested this matter and defended it well from the outset.

15.     On November 13, 2022, after extensive investigation by Lead Counsel, Lead Plaintiff filed an Amended Class Action Complaint for Violations of the Federal Securities Laws, which asserted the following claims: (1) Violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (against all Defendants); (2) Violations of Section 14(a) of the Exchange Act (against Defendants Inotiv, Leasure, and Taylor); and (3) "control person" claims under  Section 20(a) of the Exchange Act (against Defendants Leasure and Taylor).  Three days later, Inotiv announced the indictment of certain employees of the Company's principal supplier of "non-human primates."  As a result of this news, Lead Plaintiff sought—and obtained—leave of court to file a First Amended Class Action Complaint for Violations of the Federal Securities Laws (the "FAC"), which was filed on November 23, 2022.  ECF No. 53.  The FAC is the operative complaint in this Action.

16.     On January 27, 2023, Defendants moved to dismiss the FAC.  ECF No. 67.  Lead Plaintiff opposed Defendants' motion on March 28, 2023.  ECF No. 73.  On March 29, 2024, the Court entered an Opinion and Order denying the Defendants' Motion.  ECF No. 75.

17.     Defendants filed their Answer and Affirmative Defenses to the FAC on May 31, 2024.  ECF No. 85.

18.     On April 26, 2024, the Parties submitted their Joint Rule 26(f) Report of Parties' Planning Meeting ("Joint Rule 26(f) Report").  On April 29, 2024, the Court issued a Scheduling Order (the "Scheduling Order") establishing certain case management deadlines and otherwise approving and adopting all other dates and deadlines through the close of discovery set forth in the Joint Rule 26(f) Report.  ECF No. 82.  Shortly thereafter, the Parties commenced the discovery phase.

19.     After Lead Plaintiff served its initial document requests on the Defendants on May 13, 2024, the Parties engaged in multiple telephonic discovery conferences that, among other things, focused on the Parties' disagreement over the scope of the claims remaining in the Action and the relevance of Lead Plaintiffs' discovery requests.  Defendants began their production of documents to Lead Plaintiff in late September 2024.  In total, Defendants produced approximately 60,000 documents to Lead Plaintiff.

20.     On February 10, 2025, Lead Plaintiff filed a motion for class certification and supporting documentation that included, among other things, an expert report opining that the market for Inotiv stock was efficient during the Class Period, that Class members were entitled to a common presumption of reliance on Defendants' misstatements and omissions, and that the calculation of damages for all Class members is subject to a common methodology.  *See* ECF No. 96.  Shortly thereafter, in response to a request from Defendants, Lead Plaintiff produced more than 1,500 pages of documents and data supporting Lead Plaintiff's expert's report.

III.    **SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT OF THE ACTION**

21.     Against the backdrop of Inotiv's ongoing financial difficulties and, in anticipation of an upcoming January 2025 deadline to identify a mediator set forth in the Scheduling Order, the

6

Parties began to discuss the possibility of mediation in September 2024.  Shortly thereafter, the Parties scheduled an in-person mediation to take place in New York City on February 24, 2025 before a nationally-recognized mediator, Mr. Robert A. Meyer, Esq.  (the "February 2025 Mediation Session").  Prior to the February 2025 Mediation Session, the parties submitted detailed mediation statements.  While the February 2025 Mediation Session did not result in a settlement, the parties continued settlement discussions over the course of the months that followed via numerous telephone conferences.

22.     On September 25, 2025, the Parties reached an agreement to settle the Action for $8,750,000, subject to approval by this Court.

## IV.     COMPLIANCE WITH PRELIMINARY APPROVAL ORDER

23.     On October 3, 2025, the Court issued its Preliminary Approval Order directing that Notice be provided to the Settlement Class.  *See* ECF No. 112.  For purposes of settlement, the Court appointed Oklahoma Police as Class Representative for the Settlement Class, appointed Berman Tabacco as Class Counsel and CohenMalad as Liaison Counsel for the Settlement Class, and appointed and Angeion Group, LLC ("Angeion") as the Claims Administrator.  *Id*. at ¶¶ 3, 7.

24.     As discussed herein and in the accompanying Declaration of Dawn M. Cody Regarding: (A) Mailing and Emailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Cody Declaration" or "Cody Decl.," attached as Exhibit 1 hereto), the Court-appointed Claims Administrator, Angeion Group, has carried out all of the steps set forth in the Preliminary Approval Order for providing Notice to the Settlement Class, including providing the Notice to 16,223 potential Settlement Class Members, publishing/transmitting the Summary Notice, and posting settlement-related information and documents on the Settlement Website, www.InotivSecuritiesSettlement.com.  *See* Cody Decl. at ¶¶ 4-15 and Exs. A-G thereto.

25. Following the Court's preliminary approval of the Settlement, Lead Plaintiff, Lead Counsel, and the Claims Administrator implemented the Court-approved notice plan. Pursuant to the Court's Preliminary Approval Order, the Postcard Notice and/or E-Mail Notice were sent to all registered holders of Inotiv common stock during the Settlement Class Period, as identified by Inotiv's transfer agent, and to a list of known banks, brokers, and other nominees maintained by the Claims Administrator. *See* Cody Decl. ¶¶ 4-8. On or about October 31, 2025, the Long Form Notice, Claim Form, and other important documents including the Stipulation and Preliminary Approval Order were posted on the Settlement Website. *Id.* ¶ 15.

26. The Preliminary Approval Order and Notice required that nominees who purchased or otherwise acquired Inotiv common stock as a nominee for a beneficial owner during the Settlement Class Period, within ten (10) days of receipt of the Notice, either: (i) send a copy of the Postcard Notice by First-Class Mail to all such Persons; or (ii) provide a list of the names, addresses, and, if available email addresses, of such Persons to the Claims Administrator. *See id.* at ¶ 8 & Ex. D (Long Form Notice) at Section 22. Pursuant to this provision, Angeion received an additional 770 names and addresses of potential Settlement Class Members from individuals or brokerage firms, banks, institutions and other nominees to whom Angeion sent Postcard Notices or E-Mail Notices; Angeion has also received requests from brokers and other nominee holders for 8,226 copies of the Postcard Notice and 2,291 copies of the E-Mail Notice, which the brokers and nominees are required to mail to their customers. *See id.* at ¶¶ 9-10.

27. A total of 16,235 forms of Notice have been mailed or emailed to potential Settlement Class Members and their nominees, including 13,736 Postcard Notices and 2,499 E-Mail Notices. *Id.* at ¶ 12. The Court-appointed Claims Administrator, Angeion, received 25 Postcard Notices returned by the United States Postal Service ("USPS") as undeliverable. *See id.*

at ¶ 12.  Angeion performed address verification searches ("skip tracing") in an attempt to find updated addresses for the undeliverable Postcard Notices and was able to find 13 updated addresses through skip tracing.  *See id.*  Accordingly, the direct Notice via Postcard Notice or E-Mail Notice was provided to 16,223 potential Settlement Class Members.  *See id.*

28.     In addition to mailing and emailing Notice to potential Settlement Class Members, on November 10 and 17, 2025, the Summary Notice was published in *Investor's Business Daily* (a publication focused on the stock market, business, and finance) and transmitted over *PR Newswire* on November 14, 2025.  *See id.* at ¶ 13 & Exs. F and G.  Both of these forms of Summary Notice included contact information for the Claims Administrator and Lead Counsel, as well as the address of the settlement website, www.InotivSecuritiesSettlement.com.  *See id.*

29.     The Notice apprised Settlement Class Members of the nature and pendency of the Action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released.  In addition, the Notice provided Settlement Class Members with the following information: (i) the Settlement consideration; (ii) the Parties' reasons for proposing the Settlement; (iii) the estimated average recovery per affected common share; (iv) the attorneys' fees and expenses sought; (v) the contact information of the Claims Administrator and Lead Counsel's representatives who are available to answer questions; (vi) the right of Settlement Class Members to participate in the Settlement, object to any aspect of the Settlement, the Plan of Allocation, and/or the fee and expense application, or exclude themselves from the Settlement; (vii) the dates and deadlines for certain Settlement-related events; (viii) the rationale behind the Plan of Allocation; (ix) how to submit Claim Forms, object, or opt out of the Settlement and the timing needed to do so; and (x) that the Claims Administrator will maintain a toll-free number to answer questions as well as maintain a website where, among other things, key pleadings in this case may

be viewed.  The Notice specifically informed recipients that Lead Counsel intended to apply for an award of attorneys' fees not to exceed twenty-five percent (25%) of the Settlement Amount, or approximately $2,187,500, reimbursement of litigation expenses in an amount not to exceed $120,000, and reimbursement of Lead Plaintiff's expenses in an amount not to exceed $7,500.

30.    The Settlement Website, www.InotivSecuritiesSettlement.com, went live on October 31, 2025.  The Settlement Website contains a copy of the Notice, Claim Form, and Stipulation, as well as a copy of the First Amended Complaint, the motion for preliminary approval and supporting papers, and the Preliminary Approval Order.  Copies of Lead Plaintiff's Final Approval Motion, Lead Counsel's Fee & Expense Motion, and this declaration and the exhibits thereto will be posted to the Settlement Website shortly after they are filed with the Court.

## V.    RISK FACTORS

31.    In connection with the briefing on Defendants' motion to dismiss, in Defendant's Answer and affirmative defenses, in meet-and-confer discussions on the scope of the remaining claims in this action, in Lead Plaintiff's motion for class certification, and in the mediation statements and related information exchanged in the context of the Mediation, the Parties exchanged extensive analyses of key legal and factual issues in this Action.  These issues include, *inter alia* the necessary elements of falsity, materiality, scienter, loss causation, and damages, as well as issues related to class certification.  For example, Defendants contend that: (a) they made no actionable material misrepresentations; (b) the alleged disclosures concerning the Envigo acquisition were both known and immaterial to investors years before the close of the Class Period or Settlement Class Period; (c) Defendants did not act with the requisite scienter; (d) Defendants timely disclosed all issues with regard to the existence of the DOJ and governmental investigations; and (e) Lead Plaintiff and the Settlement Class were not damaged.

32.     Lead Counsel, who have a decades of experience in the prosecution and resolution of complex class actions and securities litigation, have carefully evaluated the merits of the case and the proposed Settlement.  Lead Counsel believe that the case was strong and that there was sufficient evidence to proceed to the jury on Lead Plaintiff's claims.  They recognize, however, that Defendants would strenuously challenge the allegations and proof regarding each element of the causes of action, including materiality, falsity, scienter, and loss causation, and that a likely vigorously contested motion for class certification presented significant challenges.  Defendants would further challenge the class-wide damages alleged by Lead Plaintiff, arguing that actual damages were significantly less, if not nonexistent.  Lead Counsel recognize that these challenges would pose significant risks regarding the ability to prevail on the merits and the scope of damages if the case were to proceed to trial.  Based on their extensive experience, Lead Counsel understand the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict.  As such, Lead Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

33.     Continued litigation of this complex Action—through the completion of class certification briefing and related expert discovery, likely appeals of a decision on class certification, full merits fact discovery, merits expert discovery, dispositive motion practice, pre-trial preparation, trial, a jury verdict, post-trial motion practice, and post-trial appeals—would have undoubtedly been a long and expensive endeavor.  This complex action involves a range of disputed issues including issues of materiality, falsity, damages, loss causation, scienter, and class certification.  While Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious, Defendants have denied, and continue to deny, each and all of the claims and contentions asserted.

11

34.     Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues including animal welfare and related regulatory issues, loss causation, and damages.  If the trier of fact finds Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims.

35.     Lead Counsel consulted extensively with its loss causation/damages expert with regard to the claims asserted in the FAC to support its motion for class certification and to prepare the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), which is described in the Notice of Pendency of Class Action and Proposed Settlement (the "Long Form Notice").

36.     To estimate price inflation during the Settlement Class Period, Lead Plaintiff's damages consultant performed an event study of the alleged corrective event, and Company-specific returns were estimated using a regression analysis, which measures the relationship between Inotiv stock returns and (i) changes in market-wide factors that would be expected to impact all stocks; and (ii) changes in industry-wide factors that would be expected to impact stock of companies operating in Inotiv's industry sector.  Then, the Company-specific returns (i.e., net of market and industry effects) observed on the corrective event date (May 23, 2022) formed the basis of the estimate of price inflation present during the Settlement Class Period, subject to modification based on the market reaction to any confounding news released on the same date. Then, to estimate aggregate class-wide damages under Sections 10(b) and 14(a), the timing and quantity of investor transactions in Inotiv common stock during the Settlement Class Period were estimated using the proportional "80/20 Multi-Trader Model," which posits two active traders with different holdings and propensities to trade.  The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (i.e., they hold 80% of the shares available, but trade

20% of the volume) and a small set of "fast" traders (i.e., they hold 20% of shares available, but trade 80% of the volume). Applying the theory of per-share damages to the daily trading behavior predicted by the 80/20 Multi-Trader Model, Lead Plaintiff's damages consultant estimates total combined (Section 10(b) plus 14(a)) alleged damages during the Class Period were approximately $64.9 million, based on the May 2022 corrective disclosure for both claims.

37. A recovery of $8,750,000 therefore represents approximately 13.5% of the estimated total alleged damages, more than double the median reported values for securities fraud class actions generally and in the Seventh Circuit, where the median settlement recovery is 6.2% of damages. *See* Cornerstone Research, "2024 Review & Analysis: Securities Class Action Settlements." Ex. 5, at 20. In fact, the percentage recovery obtained here exceeds the median and average settlements in securities class actions as a percentage of "Plaintiff-Style Damages" for the past 5 years. *Id.* at 21.

38. Given the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict, Lead Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Based on their experience and close knowledge of the facts and applicable law and defenses, Lead Counsel and Lead Plaintiff have determined that the Settlement is in the best interest of the Settlement Class. As described below, at the time the Settlement was reached, there were significant risks facing Lead Plaintiff with respect to establishing both liability and damages.

39. In agreeing to settle, Lead Plaintiff and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving materiality, falsity, and damages; (ii) Defendants' inevitable challenges to class certification and truth on the market defense, and the delays involved in the inevitable appeals of

13

class certification; and (iii) the fact that, even if Lead Plaintiff prevailed at summary judgment and/or trial, any monetary recovery could have been less than the Settlement Amount and the delays that would follow even a favorable judgment including appeals. Lead Plaintiff and Lead Counsel also considered the numerous defenses asserted by Defendants on the merits. For example, Defendants maintain that they made no actionable misrepresentations, that any alleged violations at the Envigo Cumberland Facility were known and immaterial to investors before the close of the Class Period or Settlement Class Period, that Defendants did not act with the requisite scienter, that Defendants are not liable for any alleged damages, and that Lead Plaintiff and the Settlement Class were not damaged.

40. Additionally, to prove its claims, Lead Plaintiff would need to rely extensively on expert witnesses on issues ranging from animal welfare compliance to loss causation and damages. If the trier of fact were to find Defendants' experts more credible, this could negatively affect Lead Plaintiff's claims. Moreover, if the trier of fact is persuaded by Defendants' likely truth-on-the-market defense—including, for example, the argument that investors understood the risks associated with the Cumberland Facility based on publicly available information from before and during the Class Period—this could potentially reduce total compensable damages to near zero.

41. Barring a settlement, there is no question that this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than the Settlement.

42. Lead Plaintiff also faced serious collectability concerns. On May 15, 2024, Inotiv first warned investors of risks that could give rise to substantial doubt about the Company's ability to continue as a "going concern." The Company has continued to make "going concern"

14

disclosures since that time.  Thus, if Lead Plaintiff were to continue to pursue this litigation and obtain a judgment, Lead Plaintiff and Lead Counsel have little confidence in the ability of the Company or individual Defendants to satisfy any such judgment in an amount equal to or in excess of the current proposed settlement amount.

## VI.    PLAN OF ALLOCATION

43.    As noted above, Lead Counsel consulted extensively with its loss causation/damages expert with regard to the claims asserted in the Amended Complaint to support its motion for class certification, to prepare for mediation, and to prepare the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), which is described in the Notice.

44.    The Plan of Allocation assumes that the price of Inotiv common stock was artificially inflated throughout the Settlement Class Period.  The computation of the estimated alleged artificial inflation in the price of Inotiv common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff.  The Plan of Allocation sets forth Recognized Loss estimates based on Lead Plaintiff's determination, based on consultation with its damages consultant, that a corrective disclosure removed artificial inflation from the price of Inotiv common stock on May 20, 2022 (the "Corrective Disclosure Date").  Thus, for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Inotiv common stock must have either (i) been purchased or acquired during the Settlement Class Period and held through the Corrective Disclosure Date; or (ii) been held of record or beneficially owned as of the close of trading on October 4, 2021 and held through the Corrective Disclosure Date.

45.    Under the Plan of Allocation, persons and entities who purchased Inotiv common stock during the Class Period or held Inotiv common stock as of the record date of October 4,

2021, are potentially eligible to share in the distribution of the Net Settlement Fund, if they submit valid claim forms. The Plan of Allocation describes the method of calculating each Claimant's Recognized Loss for each share of Inotiv purchased or held during the Settlement Class Period, as well as their *pro rata* share of the Net Settlement Fund. Specifically, the Net Settlement Fund is to be allocated in proportion to the Recognized Loss calculated by the Claims Administrator for each Authorized Claimant. Each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, and multiplied by the total amount in the Net Settlement Fund.

46. The per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that Lead Plaintiff's damages consultant calculated for litigation purposes and as the estimated maximum amounts of damages Settlement Class Members could likely recover at trial.

47. Thus, I am informed and believe that the Plan of Allocation provides an equitable and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund among Claimants who suffered economic losses as a result of the alleged fraud and should be approved by the Court.

## VII. APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

48. Lead Counsel intend to request an award of attorneys' fees of no greater than 25% of the settlement amount, or $2,187,500, and the reimbursement of $112,854.78 in litigation expenses.

49. As described in the memorandum of law in support of the Fee & Expense Motion, filed contemporaneously herewith, the 25% fee is comparable to attorneys' fees awarded in

comparable securities class actions.  The requested attorneys' fee represents a lodestar multiplier of approximately 0.6 (i.e., a *negative* multiplier), based on the 4,693 hours expended by Lead Counsel and Liaison Counsel prosecuting and reaching a settlement in this Action.  This is well within or below the range of multipliers awarded in federal securities and other complex common fund class action settlements.

50.    Set forth below is a schedule reflecting the amount of time Berman Tabacco attorneys and professional staff worked on the Action from the inception of the case through December 15, 2025, and the corresponding lodestar value of that work, for which Berman Tabacco seeks an award of attorneys' fees.  The schedule was prepared based upon daily time records maintained by Berman Tabacco attorneys and professional support staff in the ordinary course of business, and the lodestar calculations are based on the firm's current hourly rates as presented in similar lodestar calculations in other complex litigation.  Berman Tabacco attorneys or professional support staff who devoted fewer than 20 hours to the Action are excluded from this schedule.  The time and lodestar spent preparing the Fee & Expense Motion were also excluded from these values.

| Timekeeper | | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Patrick Egan | Partner | 438.70 | $1,150 | $504,505 |
| Steven Buttacavoli | Partner | 1,551.60 | $1,070 | $1,660,212 |
| Christina Fitzgerald | Associate | 1,239.80 | $ 420 | $520,716 |
| Jay Eng | Of Counsel | 71.60 | $1,040 | $74,464 |
| Justin Saif | Of Counsel | 422.70 | $ 920 | $388,884 |
| Ellee McKim | Staff Attorney | 75.50 | $450 | $33,975 |
| Mackline Bastien | Staff Attorney | 511.10 | $450 | $229,995 |
| Beto Segura | Paralegal | 14.60 | $410 | $5,986 |
| Kathy Becker | Paralegal | 22.20 | $535 | $11,877 |
| Kerri Keefe | Paralegal | 29.60 | $450 | $13,320 |
| James Houghton | Investigator | 289.00 | $670 | $193,630 |
| **TOTALS** | | 4,666.40 | | $3,637,564.00 |

51.     The hourly rates for attorneys and professional support staff in my firm have been accepted by courts throughout the country in other complex class actions.  *See*, *e.g., Hayden v. Portola Pharm., Inc.*, No. 3:20-cv-00367-VC (N.D. Cal. Mar. 6, 2023); *Utah Ret. Sys. v. Healthcare Services Group, Inc.*, 2:19-cv-01227-ER (E.D. Pa. Jan. 12, 2022); *Oklahoma Police Pension & Ret. Sys. v. Sterling Bancorp, Inc.*, No. 5:20-cv-10490-JEL-EAS (E.D. Mich. Sep. 23, 2021); *In re Alphabet Inc. Shareholder Deriv. Litig.*, No. 19CV341522 (Cal. Super. Ct. Santa Clara Cty. Feb. 5, 2021); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *4-5 (S.D.N.Y. June 16, 2020); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018); *In re BP p.l.c. Sec. Litig.*, No. 4:10-md-02185, ECF No. 1512 (S.D. Tex. Feb. 13, 2017); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, ECF No. 234 (N.D. Cal. Mar. 18, 2016); *In re Fannie Mae 2008 Sec. Litig.*, No. 1:08-cv-07831-PAC, ECF No. 552 (S.D.N.Y. Mar. 3, 2015); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *22 (N.D. Cal. Feb. 3, 2015).

52.     As discussed in detail in the accompanying Declaration of Scott D. Gilchrist in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of CohenMalad, LLP (the "Gilchrist Declaration" or "Gilchrist Decl."), attached hereto as Exhibit 3, Liaison Counsel's time on this case is 26.6 hours with a lodestar value of $25,295.00.  *See* Gilchrist Decl. at ¶ 5.

53.     Thus, the total time expended by Lead Plaintiff's Counsel in prosecuting this case on behalf of the Settlement Class is 4,693 hours, with a lodestar value of $3,662,859.

54.     Berman Tabacco's lodestar figures do not include charges for expense items. Expense items are billed separately, and such charges are not duplicated in the firm's current billing

rates. Further, expense items do not contain any general overhead costs and do not contain a surcharge over the amount paid to the corresponding vendor(s).

55. As detailed and categorized in the below schedule, Berman Tabacco has incurred a total of $112,829.78 in unreimbursed expenses for which it seeks to be reimbursed from the Settlement Fund.

| Category | Amount |
|---|---|
| Computer Research | $23,718.23 |
| Expert Consultation | $50,822.00 |
| Filing Fees | $414.84 |
| Hosting and Document Collection | $6,353.98 |
| Mediation Fees | $22,393.56 |
| Photocopying | $279.84 |
| Travel Lodging and Meals | $8,847.33 |
| | |
| **TOTAL** | $112,829.78 |

The above schedule was prepared based upon expense records reflected in the books and records of Berman Tabacco. These books and records are prepared from expense vouchers, check records, receipts and other source materials.

56. The types of expenses for which Lead Counsel seek reimbursement were necessarily incurred in this Action and are of the type routinely charged to classes in contingent litigation, including expenses associated with, *inter alia*, research, damages consultants, and mediation. The largest portion of Lead Counsel's expenses, $50,822.00, went to pay for the services of experts and consultants, including Plaintiff's expert at class certification and damages consultant who assisted Oklahoma Police and Lead Counsel in connection with the investigation of the claims, the Mediation, and preparing the Plan of Allocation. The second largest expense was $23,718.23 in online research costs for legal research related to, *inter alia*, analyzing and bringing the claims,

19

opposing Defendants' motions to dismiss, filing Lead Plaintiff's motion for class certification, and addressing discovery and mediation concerns. The third largest component of Lead Counsel's expenses was $22,393.56 in mediation fees in connection with the February 2025 Mediation session, as well as numerous pre- and post-mediation discussions with Robert A. Meyer. The other expenses for which Lead Counsel seek reimbursement include, *inter alia*, document hosting and retention (i.e., vendor expenses associated the electronic document review platform used to review documents produced in discovery), travel, meal and lodging costs, document-reproduction costs, and filing fees.

57.	As discussed in the Gilchrist Declaration, Liaison Counsel has incurred $25.00 in unreimbursed expenses on behalf of the Settlement Class in this case. *See* Gilchrist Decl. at ¶ 7.

58.	Thus, the total expenses incurred by Lead Plaintiff's Counsel in the prosecution and settlement of this Action is $112,854.78.

59.	To date, there have been no objections to Lead Counsel's proposed fee or expense requests as described in the Court-approved Notice.

60.	With respect to the standing of Lead Counsel, attached hereto as Exhibit 2 is a biography of my firm and the attorneys in my firm that were involved in this Action.

61.	The $8.75 million Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded through further litigation and to trial. At the time the Settling Parties reached an agreement to settle the Action, Lead Plaintiff had filed a Motion for Class Certification that had been denied *sua sponte*, with leave to re-file the class certification motion should the stay of all proceedings in the Action pending settlement discussions expire. Thus, a decision on class certification (and likely appeals thereof), merits discovery, summary judgment, trial, and possible

appeals all lay ahead.  The Settlement will provide finality and meaningful relief to hundreds or thousands of Inotiv investors in the Settlement Class.

62.     Moreover, Lead Counsel undertook significant risk in prosecuting the action entirely on a contingent basis, receiving no compensation during the time the action has been pending, and was never guaranteed payment of any fee.  Lead Counsel have national standing and extensive experience in litigating securities and other complex class actions and has recouped billions of dollars for investors in securities class actions since the enactment of the PSLRA, and Liaison Counsel has significant experience with complex litigation in this district.  *See* Exs. 2 and 3, attached hereto.  Lead Counsel have also participated in dozens of mediations and worked on the resolution of numerous settlements.  Lead Counsel prosecuted this case vigorously, provided high quality legal services, and achieved a great result for the Settlement Class.  Moreover, the effort and skill of Lead Counsel in investigating the claims, drafting the Amended Complaint, opposing Defendants' motion to dismiss, moving for class certification, and presenting a strong case throughout the Parties' settlement discussions was essential to achieving a meaningful resolution of the Action.

63.     In advancing this litigation, Lead Counsel's substantial efforts were met by aggressive and highly skilled defense attorneys who vigorously contested Lead Plaintiff's claims, with the Defendants here represented by law firm Katten Muchin Rosenman LLP, one of the country's preeminent law firms.  Barring a settlement, there is no question that this case would be aggressively litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than achieved through the Settlement.

## VIII.   REIMBURSEMENT OF THE EXPENSES OF LEAD PLAINTIFF OKLAHOMA POLICE IS FAIR AND REASONABLE

64.    The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."   15 U.S.C. § 78u-4(a)(4).   Accordingly, Oklahoma Police seeks reimbursement of its reasonable costs incurred directly for its work representing the Settlement Class in the amount of $7,500.  The amount of time and effort devoted to this Action by Class Representative is detailed in the accompanying Declaration of Ginger Sigler (the "Sigler Declaration" or "Sigler Decl."), attached hereto as Exhibit 4.  The Court-approved Notice provided that Oklahoma Police may seek "up to $7,500 for its time and expenses incurred in representing the Settlement Class." *See* ECF No. 109 at Ex. A-1.  To date, no Settlement Class Member has objected to the request for reimbursement of Oklahoma Police's time and expenses.

65.    As discussed in the Sigler Declaration, Oklahoma Police has been fully committed to pursuing this Action from the outset, devoting its time to reviewing pleadings and motions, participating in strategic decisions, participating in class certification discovery, consulting with counsel, and having a representative attend the Mediation. *See* Sigler. at ¶¶ 4, 8.

66.    As a public pension fund and an institutional investor which manages more than $3.5 billion in assets for over 5,000 active members, 3,309 retirees, and over 1,000 beneficiaries, Oklahoma Police is precisely the type of class representative the PSLRA was designed to encourage. *See* Sigler Decl. at ¶ 1.  According to the House Conference Report on the PSLRA, "[t]he Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. 104-369, 34 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

67. Based on its involvement throughout the course of this Action, Oklahoma Police supports final approval of the settlement and Lead Counsel's fee and expense request. *See* Sigler Decl. at ¶¶ 5-6. Oklahoma Police believes that the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class. *See id*. at ¶ 5. Oklahoma Police further believes that Lead Counsel's request for an award of attorney's fees in the amount of 25% is fair, reasonable, and consistent with the fee agreement between Lead Counsel and Oklahoma Police, which was entered into at the outset of the litigation. *See id*. at ¶ 6. In addition, Oklahoma Police believes that the expenses incurred by counsel are fair, reasonable, and necessary to the successful prosecution and resolution of this Action. *See id*.

## IX. REACTION OF THE SETTLEMENT CLASS

68. The deadline for objections or requests for exclusion from the Settlement Class is January 6, 2026. *See* ECF No. 112 at ¶¶ 13, 16. While the deadline to submit objections and requests for exclusion has not passed, no Settlement Class Member has objected to the Settlement, Plan of Allocation, or Lead Counsel's request for attorneys' fees and reimbursement of expenses, and no Settlement Class Member has requested exclusion from the Settlement. *See* Cody Decl. at ¶¶ 17-18. Should any requests for exclusion or objections be received after the date of this submission, Lead Plaintiff and Lead Counsel will address them in their reply brief.

*         *         *

69. I have been informed by counsel for Defendants that Defendants take no position as to the Motion for Final Approval and the Fee & Expense Motion.

70. Attached hereto are true and correct copies of the following documents:

    a. Exhibit 1: Declaration of Dawn M. Cody Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date;

    b. Exhibit 2: Firm resume of Berman Tabacco;

23

c.  Exhibit 3: Declaration of Scott D. Gilchrist in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of CohenMalad LLP;

d.  Exhibit 4: Declaration of Ginger Sigler on Behalf of Oklahoma Police Pension and Retirement System in Support of Motion for Final Approval of Class Action Settlement and an Award of Attorneys' Fees and Expenses;

e.  Exhibit 5: Cornerstone Research, "2024 Review & Analysis: Securities Class Action Settlements;" and

f.  Exhibit 6: Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024 Full-Year Review, NERA, at 30 (Jan. 23, 2024).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this, the 23rd day of December, 2025, at Boston, Massachusetts.

*/s/ Steven J. Buttacavoli*
Steven J. Buttacavoli

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of December, 2025, a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system.

Dated: December 23, 2025                    */s/ Steven J. Buttacavoli*
                                            Steven J. Buttacavoli